DAVENPORT v. ELROD et al., Capitol Commissioners.

A proceeding in prohibition to prevent the state capitol commission, created by Laws 1905, p. 275, c. 163, from executing certain contracts, impliedly admits the legal existence of the commission, and hence does not properly raise the question of the unconstitutionality of the statute as a whole; quo warranto being the appropriate remedy if the legal existence of the commission is sought to be denied.

Laws 1905, p. 275, c. 163, creating a board, to be known as the "State Capitol Commission," for the purpose of procuring the erection of a capitol building and authorizing the commission to procure the erection of a building, adopt plans and specifications, etc., is not in conflict with Const. art. 3, § 26, declaring that the Legislature shall not delegate to any special commission power to perform any municipal function; the erection of a capitol building not being a municipal function.

Neither is the act unconstitutional as a delegation of legislative power.

Laws 1905, p. 275, c. 163, entitled "An act relating to the creation of a state capitol commission to provide for the erection of a building for capitol purposes and to provide funds for that purpose," and authorizing the construction of a capitol building by the use of funds derived from the sale of land granted to the state for public buildings by section 12 of the enabling act (Ann. St. 1901, § 261), is not unconstitutional on the ground that the provision last mentioned is not within the scope of the title, or that it contains more than one subect.

Laws 1905, pp. 275-277, c. 163, §§ 2, 3, created the state capitol commission, and authorized it to procure the construction of a capitol building, but provided that no debt should be created in excess of the amount of cash in the state capitol building fund. The commission prepared plans for one wing of a capitol building, but advertised for separate bids on different portions as it might deem proper. **Held** that, though the fund on hand was insufficient to pay the expense of erecting the entire wing according to the plans adopted by the commission, nevertheless prohibition would not lie at the suit of a taxpayer to restrain the execution of the contract, since the various contracts might be executed separately without exhausting the funds on hand, and it

would not be presumed that the commission would exceed its authority.

Laws 1905, p. 275, c. 163, creating the state capitol commission and authorizing it to procure the construction of a capitol building according to such plans as it may adopt, gives the commission authority to select such material as it may see fit, and Laws 1903, p. 93, c. 85, providing that the state board of charities and corrections may direct the warden of the penitentiary to furnish gratuitiously from the labor of convicts sufficient stone for the construction of a suitable state capitol building, provided suitable stone can be procured in the quarries belonging to the state, does not require the commission to use such stone.

Under Laws 1905, p. 275, c. 163, creating the state capitol commission and authorizing it to procure the construction of a capitol building, the commission cannot be prohibited from inserting in contracts made by it provisions that in case certain controversies arise they shall be finally determined by the architect; since, if such stipulations are within the scope of the commission's authority, it cannot be prevented from inserting them, while, if they are not, they are of no effect.

(Opinion filed, May 9, 1906.)

Proceeding in prohibition by William B. Davenport against Samuel H. Elrod and others, as members of the capitol commission of the state of South Dakota. Proceeding dismissed. .

*U. S. G. Cherry,* for plaintiff.

The legislature shall not delegate to any special commission, private corporation, or association, any power to make, supervise or interfere with any municipal improvement, money, property, effects, whether held in trust or otherwise, or levy taxes, or select a capitol site, or perform any municipal functions whatever. Con. Art. 3, § 26. Municipal has not a well-defined and technical meaning, and must be construed with reference to the evils to be prevented and the purposes to be accomplished, the history of the provision of the constitution in which it is used, and the practical construction that has been placed upon it. 1 Bl. Comm. 44; 2 Kent, Comm. 275; 2 Burrill, Law Dict. 215; Horton v. Commissioners, 43 Ala. 606; Dillard v. Webb, 55 Id. 474. Agricultural Society v. Houseman, 81 Mich. 615. The constitution of this state, like the constitutions of other states in the union, reserves to the legislature exclusive legislative powers. "The legislative power shall be vested in the legislature, which shall consist of a Senate and House of Representatives." Sec. 1, Article 3. The courts have been more frequently

called upon to consider the question of delegated powers in connection with the action of city councils. Such questions usually arise in connection with the efforts of city councils to delegate to special committees, officers, or individuals powers which are delegated to the council itself. Re Pittsburg, 138 Pa. 401; Smith v. Duncan, 77 Ind. 92; Hydes v. Joyes, 4 Bush. 454, 95 Am. Dec. 311; Whyte v. Nashville, 2 Swan, 364; Lippleman v. Cincinnati, 4 Ohio C. C. 327; Re New York Presbytery Trustees, 57 How. Pr. 500; Thomson v. Boonville, 61 Mo. 222; Thompson v. Schermerhorn, 5 N. Y. 92; Zabel v. Louisville, 13 L. R. A. 668; Richardson v. Heydenfeldt, 46 Cal. 68; Macon v. Patty, 57 Miss. 378; Ruggles v. Collier, 43 Mo. 353; Tappan v. Young, 9 Daly 357; Stockton v. Creaner, 45 Cal. 643; Muser v. Risdon, 36 Cal. 239; McCrowell v. Bristol, 20 L. R. A. 653. The act of 1905 violates Section 21 of article 3 of the Constitution providing that "No law shall embrace more than one subject which shall be expressed in its title." It embraces at least two subjects. The one relates to the construction of a state capitol building by means of a special commission. The other relates to a very different and very important subject,— the disposal of certain lands donated to the state by the national government and held in trust. The title of the act is as follows: "An Act entitled an Act Relating to the Creation of a State Capitol Commission to provide for the erection of a building for capitol purposes on Block Twenty-one (21) in the Fourth (4) Railway addition to the town, now city of Pierre, in the County of Hughes, State of South Dakota, and to provide funds for that purpose."

*Philo Hall, Atty. Gen., Aubrey Lawrence, Asst. Atty. Gen.,* and *H. R. Horner,* for defendants.

Boards, commissioners, councils, and administrative and ministerial officers and bodies, when invested with limited judicial powers, may be confined within the limits of their authority when they are exercising such powers, but cannot be interfered with in their administrative or ministerial acts, whether they possess a quasi-judicial character or not. 16 Enc. Pl. and Pr. 1106, 1107. High's Ex. Legal Rem. 738. The judiciary has no power to invade the province of the legislature, and prohibition is not a fit remedy to restrain the legislative department of the government in the execu-

tion of its duties. Mauran v. Smith, 8 R. I. 192; State v. War-moth, 22 La. Ann. 1; People v. Bissell, 19 Ill. 229; People v. Yates, 40 Ill. 126; People v. Hatch, 33 Ill. 9; High, Legal Rem. §§ 122-126; Fleming v. Guthrie, 3 L. R. A. 54; State v. Dike, 20. Minn. 363; State v. Whitcomb, 28 Minn. 50. The writ of prohibition will not lie to interfere with the performance of ministerial acts. or executive acts involving discretion. State ex rel Dakota Hail Ass'n v. Carey, 2 N. D. 36, 49 N. W. 164; Sawyer v. Mayhew, 10. S. D. 23. Mandamus will not lie to compel a board of county commissioners\to award a contract to a particular bidder on the ground. that he is the lowest responsible bidder, as the duties of such board are not merely ministerial. In re McCain ,9 S. D. 57. The sole- question for determination upon an application for the writ of pro-- hibition is whether or not the inferior court has usurped jurisdiction or exceeded its lawful powers, and the writ is always refused: where it appears that the court has jurisdiction over the matter complained of. 16 Ency. Pl. and Pr., 1094; Ex. p. Montgomery, 24 Ala. 98; Ex. p. Peterson, 33 Ala. 74; Ex. p. Scott, 47 Ala. 609 ;: Ex. p. Keeling ,50 Ala. 474; Ex. p. State, 51 Ala. 60; Ex. p.. Brown, 58 Ala. 536; Ex. p. Blackburn, 5 Ark. 21; Ex. p. Tucker, 25 Ark. 567. The Constitution. Sec. 1, Art. 3, of the Constitution provides that the legislative power shall be vested in the legislature, which shall consist of a senate and a house of representatives. Sec.. 26, Article 3, provides that "the legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement,. money, property or effects, whether held in trust or otherwise, or levy taxes, or to select a capitol site, or to perform any municipal functions whatever." The first is a grant of power, and the second is a limitation of power. Section 26, Article 3, has reference to municipal improvements and municipal functions, with the exception of the clause, "or to select a capitol site". The proceedings of our constitutional convention show that this section 26. was taken from the Constitution of the state of Pennsylvania, with the exception of the clause, "or to select a capitol site": Objection was made to this clause: being inserted, for the reason that it was not germane to the subject matter therein contained, but it was allowed.

to stand. (Constitutional Record, pages 416-417.) This section is identical, word for word, with the Pennsylvania Constitution, with the exception of the words "or to select a capitol site", and that state was the first to incorporate a provision of that nature into its Constitution, and it was inserted in the Constitution of the state of Pennsylvania in 1873, and since that time it has been incorporated into the Constitutions of a number of states. The courts of Pennsylvania in construing the charters of municipal corporations, had decided that all the agencies of the city, that is the corporators, could be abolished or changed at the will of the legislature, and even their functions terminated and assigned to other and different agencies without the consent and even against the will of inhabitants. That the legislature could appoint a Board of Commissioners to perform specified municipal functions, and authorizing commissioners to ascertain the indebtedness of a township, or the amount due from boroughs respectively, and make a just distribution of the indebtedness between the townships and boroughs, and this condition of affairs continued to such an extent until it finally culminated in a case brought by the city of Philadelphia against certain commissioners provided by the legislature of the state of Pennsylvania to control and take care of the bequests given by Stephen Girard, Benjamin Franklin and others to the city of Philadelphia as trustee for a college and a number of municipal purposes, the supreme court having decided that the legislature had power to appoint the commissioners, and the commission would have control of the fund. This decision was rendered in 1870, the constitutional convention of Pennsylvania in 1873 inserted this section in its Constitution to cure the evil. Borough of Denmor's Appeal, 52 Pa. St. 378; Philadelphia v. Fox, 64 Pa. St. 183; See note Vol. 35 American State Reports, 529. The word municipal, as mentioned in this section, must be construed to mean as applying to political subdivisions of the state less than the whole. That this is as understood by its framers is shown by the use of the concluding part of said section, wherein it states, "or to perform any municipal functions whatever". The prohibition pertains to functions pertaining to municipalities. The word municipal does not appear to have a well defined and technical meaning, and as stated in Kent County Agri-

cultural Society v. Housman, 46 N. W. Rep. 16, the history of the provision of the Constitution in which it is used must be construed with reference to the evils to be prevented, and the purposes to be accomplished.   1st Blackstone Commentaries, 44; 2 Kent's Commentaries, 75; Horton v. Commissioners, 43 Ala. 606; Dillard v. Webb, 55 Ala. 475; In re Warner, 129 Cal. 572-3; Dowlan v. County of Sibley, 36 Minn. 431; State v. Loffingwell, 54 Mo. 475; State ex rel Jameson v. Denny, 118 Ind. 401.   Taking into consideration the origin of the section and the evils that it was inserted in the Constitution of Pennsylvania to prevent, there can be no question that it was meant to apply to political divisions of the state less than the whole, and not to the state at large.   Any other construction would be meaningless, and the word would not be given its apparent meaning and not as intended by its framers and by the people.   State v. Hostetter, 59 American State Reports, 518; State v. Sutton, 56 American State Reports, 460; Miller v. Dunn, 1 American State Reports, 67.   The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend.   To deny this would be to stop the wheels of government.   There are many things upon which wise and useful legislation must be depended which cannot be known to the law making body, and must therefore be the subject of inquiry and determination outside the halls of legislation.   C. W. & Z. R. Co. v. Com'rs, 1 Ohio St. 88; Blanding v. Burr, 13 Cal. 357; Morris v. The City of Reading, 21 Pa. St. 202; Wayman v. Sothard, 10 Wheat. 1, 43 marginal p.; Slack v. M. L. R. Co., 13 B. Mon. (Ky.) 1; State v. Parker, 26 Vt. 357; Nelson v. Troy, 39 Pac. 976; Territory v. Scott, 3 Dak. 357; State v. McGraw, 43 Pac. 178; Lock's Appeal, 72 Pa. St. 491.

HANEY, J.   This is an original special proceeding instituted by a resident taxpayer for the purpose of having the defendants prohibited from executing any contracts, issuing any certificates, or performing any acts as members of the state capitol commission. Chapter 163, p. 275, Laws 1905, purports to create a board composed of the Governor, Secretary of State, State Auditor, and Commissioner of School and Public Lands, to be known as the "State

Capitol Commission," for the purpose of "procuring the erection and completion" of a building to be used for capitol purposes, on certain described premises in the city of Pierre. It directs and authorizes the commission to procure the erection of a building which shall be adapted and designed for occupancy by the Supreme Court, its judges, and officers, and for the disposition of the Supreme Court and other libraries, records, papers, and property belonging to the state. It empowers the commission to prepare the capitol grounds for such building, and provides that the commission, in providing plans and specifications for such building, "may also adopt plans and specifications for a complete capitol building, in order that the building to be erected by said board may be a symmetrical part of a completed capitol building." It also empowers the commission "to employ an architect and to do and perform any and all acts necessary to enable the said board to carry out the provisions of the act." Having organized the commission thus provided for, employed an architect, adopted plans and specifications, and procured the construction of the subbasement of a building designed to be the east wing of a capitol, the defendants are intending to execute a contract or contracts for further work upon such wing. Now nearly one year after the organization of the commission, and after nearly $15,000 have been expended, it is asserted that further progress upon this important public improvement should be arrested for the reason, among others, that the statute purporting to create the commission is void. The importance of the litigation is apparent.

It may be doubtful whether the contention that the entire enactment is invalid should be considered in this proceeding, for the reason that prohibition, which is the counterpart of mandamus, impliedly admits the existence of the board to which the writ is directed, whereas, if plaintiff's contention be well founded, no capitol commission exists. Where it is claimed that a statute purporting to create a tribunal, board, or office is in all respects unconstitutional, and persons are acting pursuant to its provisions, an action in the nature of quo warranto, we apprehend is the appropriate remedy. However, as the court has jurisdiction to inquire whether the commission is intending to exceed its authority, as the alleged conflict between the statute and Constitution has been exhaustively

argued by able counsel, and as it is desirable to have the status of the commission determined, the alleged invalidity of the act will be considered at this time.

The entire act is claimed to be void (1) because it conflicts with section 26, art. 3, of the state Constitution; and (2) because it is an attempted delegation of legislative power. Section 26 reads as follows: "The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property, effects, whether held in trust or otherwise, or levy taxes, or to select a capitol site, or to perform any municipal functions whatever." Assuming that the Legislature attempted to create a "special commission," and did not, in effect, merely impose additional duties upon certain state officers, the existence of any conflict between its enactment and the section of the Constitution above quoted manifestly depends upon the meaning of the word "municipal" as therein employed. "The words and terms of a Constitution, like those of a statute, are to be interpreted and understood in their most natural and obvious meaning, unless the subject indicates or the text suggests that they have been used in a technical sense. The presumption is in favor of the natural and popular meaning in which the words are understood by the people who have adopted them; and where the same words are used in different parts of a Constitution or statute they are presumed to have a uniform meaning throughout the instrument, but this does not necessarily follow." 8 Cyc. 734. The word "municipal" appears to have been derived from "municipium," meaning a town, particularly in Italy, which possessed the right of Roman citizenship, but was governed by its own laws, a free town; and it may be thus defined: (1) Of, or pertaining to, a city or corporation having the right of administering local government; as, municipal rights, municipal officers. (2) Of, or pertaining to, a state, kingdom, or nation; as municipal law, municipal offense; in contradistinction to international law or international offense. Web. Internat. Dict. Bouvier says: "Strictly, this word applies only to what belongs to a city." Want of harmony in decisions relating to what local subdivisions are embraced by the phrase "municipal corporations" may have justified the con-

·clusion in other jurisdictions that the word "municipal" has not "a well-defined and technical meaning." Agricultural Society v. Houseman, 81 Mich. 609, 46 N. W. 15. But this court has said: "We are of the opinion that the framers of our Constitution intended, by the the term 'municipal corporations,' to use it in its restricted ·sense, as applicable only to incorporated cities, towns, or villages ·invested with the power of local legislation." Dell Rapids v. Irving, 7·S. D. 310, 64 N. W. 149, 29 L. R. A. 861. It should be observed, however, that all the cases to which our attention has been drawn, including Dell Rapids v. Irving ,supra, involved matters pertaining to local subdivisions, such as organized civil townships, ·school districts, or public parks, requiring an application of the first definition of the word "municipal" as above given, but in none has ·the second definition been considered. Many matters have been regarded as not municipal because they did not pertain to cities and towns. Nothing has been deemed municipal because it pertained to the state or nation. Undoubtedly the popular understanding of ·the word is restricted to the affairs of cities and towns. Such being ·its primary and popular meaning, it should not be given a secondary and unusual meaning in this instance, in the absence of cogent reasons for believing that the latter was understood and intended ·by the persons who framed and the people who adopted the Constitution. The use of the word in other parts of the Constitution does not support the plaintiff's contention; nor does a careful consideration of the entire section under discussion. It should be assumed that the language employed in so important an instrument ·would be selected with deliberation and due discrimination, to the exclusion of all unnecessary repetitions. The section forbids the delegation of power to any special commission "to perform any municipal functions whatever." If "municipal" was employed in the sense contended for by plaintiff, there was no occasion for inserting the words "or to select a capitol site." The suggestion that the genesis of these limitations upon the legislative power was hostility to the territorial capitol commission of 1883, and that they are peculiar to the Constitution of this state, merited and received serious consideration until it was ascertained from the unpublished debates of the Sioux Falls convention that they were taken from the Con-

stitution of Pennsylvania, without change, except the addition of the clause, "or to select a capitol site." It appears that, when the section was reported to the convention in its present form, Honorable Dighton Corson, now a judge of this court, moved that the words relating to a capitol site be stricken out as not germane to the subject-matter with which they were connected. It is true the motion was lost, but no one appears to have questioned the correctness of Mr. Corson's position with respect to the irrelevancy of the words embraced by his motion. So a majority of the convention may have deemed the clause relating to a capitol site germane, or they may have concluded that the propriety of its place was immaterial so long as it remained in the Constitution. One inference is as reasonable as the other, and nothing in the proceedings of the convention to which attention has been called justifies the conclusion that the word "municipal" was understood in any other than its ordinary and popular sense.

Another argument against plaintiff's contention is the fact that these constitutional limitations, except the one relating to a capitol site ,appear to have been adopted from Pennsylvania soon after the Supreme Court of that state decided it was competent for the Legislature to create a board to manage certain trust funds formerly confided to the city of Philadelphia. 2 Charters and Constitutions, 1570; Philadelphia v. Fox, 64 Pa. 169. There is, therefore, nothing to justify the conclusion that such limitations are applicable to the statute in controversy. The act is not void as an attempted delegation of legislative power. Though one of the settled maxims in constitutional law is that the power conferred upon the Legislature to make laws cannot be delegated by that department to any other body or authority, there is no constitutional reason why legislative functions which are merely ministerial or executive in their character should not be delegated by that branch of the government to other departments or to bodies created by it for that purpose. Cooley, Const. Lim. (5th Ed.) 139; 6 Am. & Eng. Ency. Law (2d Ed.) 1029. If any power possessed by the Legislature may be said to be administrative, it is the power to provide itself and other departments of the state government with buildings in which to transact the public business. The making of a building is not the mak--

ing of a law.   Authority to construct a capitol is not authority to prescribe a rule of property or of conduct.   The law was made when the Legislature authorized the defendants as a capitol commission to procure the completion of a building to be used for state purposes; and it will have been executed when the commission has performed its duties.   That this power may be exercised through and by means of a commission created for that purpose there is no doubt.   State v. McGraw, 13 Wash. 311, 43 Pac. 176; Fleckton v. Lamberton, 69 Minn. 187, 72 N. W. 65; People v. Dunn, 80 Cal. 211, 22 Pac. 140, 13 Am. St. Rep. 118; State v. Budge, 105 N. W. 725.   Though the statute involved in State v. Budge was held to be unconstitutional on the ground that the discretion conferred upon the board was not sufficiently restricted, the general rule relating to administrative functions was stated thus: "It cannot be reasonably disputed that the Legislature has power to delegate to a board the work of superintending the erection of public buildings.   The Legislature cannot act upon every detail arising in the course of the erection of public buildings, or in preparation therefor.   This power must necessarily be delegated to some person or body.   These duties are deemed executive, although they often involve discretion, and some of these could properly have been specifically provided for by legislative enactment.   Duties that relate to acceptance of plans and specifications, making contracts, selecting materials, and other similar ones relate to the execution of the law enacted by the Legislature, and are deemed administrative."   Where the function to be performed is merely administrative, it would seem that the limitations to be imposed upon the commission's discretion should rest alone with the Legislature, but conceding that unlimited discretion cannot be delegated the directions given in the case at bar are sufficiently definite to meet the objections stated in the North Dakota decision.   Here the Legislature fixed the location of the building; designated the purpose it was designed to serve; limited its cost of $150,000, and in effect directed that it be constructed as speedily as the means provided should permit.

It is next contended that the act creating the commission violates section 21, art. 3, of the state Constitution, which provides

that "no law shall embrace more than one subject, which shall be expressed in its title." This contention is clearly untenable. The act is entitled: "An act relating to the creation of a state capitol commission to provide for the erection of a building for capitol purposes on block twenty-one, in the Fourth Railway addition to the town, now city of Pierre, in the county of Hughes, state of South Dakota, and to provide funds for that purpose." The subject of the act was the construction of a building for the use of the state at the state capital. The use of funds derived from the sale of lands granted to the state for public buildings at the capital is a matter naturally and reasonably connected with such subject—a natural, reasonable, and appropriate means of accomplishing the purpose of the act—and therefore germane to its title. State v. Morgan, 2 S. D. 32, 48 N. W. 314; State v. Becker, 3 S. D. 29, 51 N. W. 1018; Stuart v. Kirley, 12 S. D. 245, 81 N. W. 147.

Section 12 of the enabling act (Am. St. 1901, § 261) granted to this state 50 sections of the unappropriated public lands for the purpose of erecting public buildings at the capital "for legislative, executive, and judicial purposes." Section 17 granted 50,000 acres "for public buildings at the capital," and provided that the lands granted by such section shall be held, appropriated, and disposed of exclusively for the purposes therein mentioned, in such manner as the Legislature may provide. Under these two grants about 82,-000 acres have been selected and patented. Though the language is not the same in both sections, it will be assumed that all of these lands were granted for the same purpose and upon the same terms. The grants contain but one condition, namely, that the land shall be held, appropriated, and disposed of exclusively for public buildings at the capital, in such manner as the Legislature may provide. No limitation is imposed upon the Legislature except as to the purpose to which the proceeds shall be applied. So far as the enabling act is concerned, the Legislature might have disposed of the entire · 82,000 acres for any sum it deemed proper to accept. If this be so, it certainly could provide as it did in the act creating the capitol commission for the disposal of a portion of the lands at not less than their actual value. The commissioner of school and public lands has not been clothed with unlimited discretion. He is re-

stricted as to amount. All must be appraised at its actual value by a constitutional board consisting of the commissioner of school and public lands, the State Auditor, and the county superintendent of schools. None of it may be appraised for less than $10 per acre. None of it may be sold for less than its appraised value, and the proceeds of the sales cannot be discounted, hypothecated, or pledged in any manner whatever, but must be exclusively used for the purpose of constructing a public building at the state capital. Laws 1905, p. 275, c. 163, § 2. It does not appear that the commissioner of school and public lands has proceeded, or intends to proceed, otherwise than in strict complience with the directions of the Legislature. In other words, certain of the capitol lands have been and are being disposed of in the manner provided by the Legislature for the purpose for which they were granted to the state. It is therefore clear that the Legislature has neither violated the Constitution nor the trust created by Congress with respect to the disposition of such lands. And this conclusion, though based upon a different view of the legislative power, is entirely consistent with the principles announced in State v. Budge, supra; the statute in that case being substantially different from the one, in this   with respect to the discretion conferred.

The law expressly provides that all expenses incurred by the commission shall be paid out of the state capitol building fund, derived from sales and rentals of capitol lands, and not out of the general fund; that no moneys shall be expended until the same shall have been thus raised and covered into the capitol building fund; that all disbursements on account of the proposed building and expenses incident thereto shall be made pursuant to certificates signed by a majority of the commission; that all claims for labor performed, material furnished, or other expenses shall be audited by the commission; that the State Auditor shall draw his warrant upon the presentation of the commission's certificate, for the amount allowed, to the order of the person named therein, to be paid by the State Treasurer on demand out of the state capitol building fund; but "that no certificate shall be issued or debt created at any time in excess of the amount of cash in such state capitol building fund when such certificate is issued or debt created." Laws 1905, pp.

275, 277, c. 163, §§ 2,3. It is argued that the letting of a contract at this time for the completion of the proposed east wing would violate these terms of the statute, in view of the present condition of the capitol building fund, the balance in which is slightly less than $20,000. Though this be true, it does not entitle the plaintiff to a writ of prohibition in this proceeding, because it cannot be presumed that the commission will exceed its authority, and it has not been shown that it contemplates doing so. On the contrary, it appears that the commission has advertised for separate bids on different portions of the required labor and material, reserving the right to contract for such portions as it may deem proper. And, should it enter into an unauthorized contract, neither the plaintiff nor any other taxpayer would suffer any injury, because such unauthorized contract would be null and void. State Const. art. 12, § 3; Van Dusen v. State, 11 S. D. 318, 77 N. W. 201.

The specifications adopted by the commission require "the cut stonework of the building" to be of "some good sand or lime stone acceptable" to the commission and architect. It is contended that this requirement conflicts with chapter 85, p. 93, Laws 1903, which provides that "the state board of charities and corrections is hereby empowered, authorized and directed to direct the warden of the state penitentiary to furnish and supply gratuitously, from the labor of convicts confined in said penitentiary a sufficient amount of rock or stone for the construction of a suitable state capitol building. Provided, suitable stone can be procured in the quarries belonging to the state." The contention is not tenable. Assuming there are quarries belonging to the state from which stone may be procured, the question of determining whether such stone is suitable for any portion of the proposed building rests with the capitol commission. It is clearly clothed by the act of 1905 with exclusive power to determine what material shall be used; and the latest expression of the legislative will must be given effect.

It appears that the specifications adopted by the commission contain stipulations usually inserted in building contracts, to the effect that the architect named therein shall determine certain controversies should they arise between the state as represented by the commission, designated the "owner," and the contractor, and that his

determination shall be final. It is contended the commission should be prohibited from inserting these stipulations in the contract or contracts it is about to execute. This is clearly untenable. If such stipulations are within the scope of the commission's authority, it cannot be prohibited from inserting them. If they are not, they will have no effect. All persons who deal with this commission are bound to ascertain the extent of its authority, and cannot enforce any provision of a contract which exceeds such authority.

It follows that the defendants are entitled to have the proceeding dismissed upon the merits and to recover their taxable disbursements.