CITY OF SIOUX FALLS, Appellant v. SIOUX FALLS FIREFIGHTERS, LOCAL 814, et al., Respondents and Cross-Appellants

(234 N.W.2d 35)

(File Nos. 11406, 11411 and 11424. Opinion filed October 9, 1975)

Roger A. Schiager, City Atty., Sioux Falls, for plaintiff and appellant.

Frank P. Gibbs, Sioux Falls, Dennis W. Finch, Pierre, for defendants, respondents and cross-appellants.

COLER, Justice.

The plaintiff city brought this action for a declaratory judgment seeking to have SDCL 9-14A, as enacted by Ch. 70, S.L. 1971, providing for binding arbitration of labor disputes of certain municipal firemen and policemen, declared unconstitutional in its entirety. From the trial court's judgment that SDCL 9-14A-18, which makes binding the board's determination, was unconstitutional but sustaining the remainder of that chapter the plaintiff has appealed. Defendants have cross appealed from the judgment to the extent that SDCL 9-14A-18 was declared unconstitutional. We affirm in part and reverse in part.

■ While it was neither alleged nor proven, it appears to be conceded that the members of Sioux Falls Firefighters, Local 814, affiliated with AFL-CIO-CLC and Fraternal Order of Police, Sioux Falls Lodge No. 1, were paid full-time firefighters within the meaning of SDCL 9-14A-1 and thus were covered employees for the purposes of SDCL 9-14A. Following a wage dispute, the firefighters, on August 9, 1973, filed a petition pursuant to SDCL 9-14A-2. The plaintiff refused to appoint its arbitrator, as required under SDCL 9-14A-3, claiming that the act was unconstitutional and commenced this action for a determination of its constitutionality. In conjunction with this action the city asked for and received an interlocutory injunction from the trial court. We conclude that there is here a justiciable controversy between parties having adverse interests and that the plaintiff's interest is legally protectible so as to authorize this proceeding under SDCL 21-24. *State of North Dakota ex rel. Strutz v. Perkins County*, 1943, 69 S.D. 270, 9 N.W.2d 500.

The trial court concluded that SDCL 9-14A-18 was unconstitutional as an unlawful delegation of legislative power and was contrary to the provisions of Article III, § 26 of the Constitution of South Dakota.

■ The conclusion of the trial court that SDCL 9-14A-18 was unconstitutional as an unlawful delegation of legislative power has generated a thorough discussion by the parties as to the status of the board of arbitration created under the act. The defendants would distinguish this board as a "public commission" under the logic that other courts have applied. *City of Warwick v. Warwick Regular Firemen's Ass'n*, 1969, 106 R.I. 109, 256 A.2d 206; *Erie Firefighters Local No. 293 v. Gardner*, 1962, 406 Pa. 395, 178 A.2d 691; *State ex rel. Everett Fire Fighters, Local No. 350 v. Johnson*, 1955, 46 Wash.2d 114, 278 P.2d 662. As those decisions may serve to distinguish this type of board from the nonpublic agency to which a delegation of authority was found to be unconstitutional in *Schryver v. Schirmer*, 1969, 84 S.D. 352, 171 N.W.2d 634, it might dispose of the challenge if we had only Article III, § 1 of the South Dakota Constitution to consider. It does not, however, answer the question raised by the explicit language of Article III, § 26 of the South Dakota Constitution.

We are mindful that at least one other state, namely, the state of Wyoming, construing a like constitutional provision has upheld binding arbitration under a law similar to SDCL 9-14A in purpose. *State v. City of Laramie*, 1968, Wyo., 437 P.2d 295. We can agree with the Wyoming court that the legislation here under consideration is an expression of public policy but that court did not consider the history or purpose of Article 3, § 37 of. its constitution. That provision of the Wyoming Constitution, which became effective on July 10, 1890, the year following the adoption of the South Dakota Constitution by our electorate, is. identical to Article 3, § 20 of the Pennsylvania Constitution which was approved at an election held on December 16, 1873, and which became effective on January 1, 1874. While the Wyoming court has relied heavily on decisions of the Pennsylvania court, it should be observed that, in order to support the constitutionality of binding arbitration, language has been added to the Pennsylvania Constitution specifically authorizing that legislation.[1]

While we do not quarrel with the legislative purpose, we are compelled to look to the history of that constitutional provision to ascertain the true intent and meaning of Section 26 of Article III of our Constitution. *State ex rel. McGee v. Gardner*, 1893, 3 S.D. 553, 54 N.W. 606.

---

1. The 1967 amendment to what was formerly Article 3, § 20 of the Pennsylvania Constitution, now designated § 31, added the second sentence to this section:

"§ 31. *Delegation of certain powers prohibited*

The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever. Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings."

"It is settled that in placing a construction on a constitution or any clause or part thereof, a court may look to the history of the times and examine the state of things existing when the constitution was framed and adopted, in order to ascertain the prior law, the mischief, and the remedy." 16 Am.Jur.2d, Constitutional Law, § 87.

The history of this provision of our Constitution has been preserved by virtue of the state's brief in *Davenport v. Elrod,* 1906, 20 S.D. 567, 107 N.W. 833. The purpose of Article III, § 26 of the South Dakota Constitution has been acknowledged by our court as established by the unpublished "Constitutional Record" of the 1885 Constitutional Convention which is no longer available but was contemporary and well known to the then members of this court, and particularly to the Presiding Judge of this court, Dighton Corson, who was a member of the Constitutional Convention of 1885. He unsuccessfully offered an amendment to the proposed draft of § 26 of Article III which would have stricken the phrase " 'or to select a capitol site' " from the draft as not germane. 20 S.D. at 576, 107 N.W. at 835. It is the above quoted phrase that identifies the only deviation of language of our constitutional provision from that of Article 3, § 20 of the original Pennsylvania Constitution.

As set forth in *Davenport v. Elrod,* supra, the Constitutional Convention of 1885 added this provision to the previous draft of a legislative article as established by the 1883 convention and the delegates to the 1885 convention deliberately copied the Pennsylvania constitutional provision with the capitol site language added. The Pennsylvania constitutional provision was adopted following a decision of the Pennsylvania Supreme Court in 1870, entitled *Philadelphia v. Fox,* 64 Pa. 169. The effect of that decision was to hold constitutional a legislative act which created a board to administer city trust funds thus giving that appointed board control of funds made available to the city of Philadelphia from bequests of such important personages as Benjamin Franklin.

It should be recognized that, in 1885, towns in this state were authorized to be incorporated under territorial laws

beginning as early as 1868. Ch. 14, S.L.1867-68, PolC 1877, Ch. 24, SDCL 9-3. Cities for the most part were, on the contrary, chartered by special law, a practice continuing until the practice was barred by the adoption of Article III, § 23 of the Constitution of South Dakota. These charters can be found in abundance either in general acts or special laws from 1862 until the Session Laws of 1883, when by virtue of the number of special acts amending those charters, the state discontinued the publication of those special acts. The legislature, by Chapter 73 of the Session Laws of 1887, first authorized cities, then existing under charter, to incorporate under the general law. It was then, with full knowledge of the purpose of the Pennsylvania provision, that the framers of our Constitution saw a need to "cure the evil" of interference with municipal functions by the legislature in this state. This court has previously determined the setting of salaries to be a legislative function of a city. *Schryver v. Schirmer,* supra. Since at least 1877, the legislature too has recognized such acts as fixing salaries by ordinance as a function of the governing board of a city. SDCL 9-14-28. We hold, therefore, that under the language of Article III, § 26 of this state's Constitution, SDCL 9-14A-18 is clearly unconstitutional.

The defendants urge this court to accept the reasoning of either the Michigan or Rhode Island courts upholding binding arbitration. The distinction between those decisions and our own in this case lies not only in the history of our constitutional provision but also on differing constitutional provisions.

Michigan, as does Pennsylvania, has a specific constitutional provision which governs. Mich.Const., 1963, Art. IV, § 48.[2] *Dearborn Firefighters Union Local No. 412 v. City of Dearborn,* 1972, 42 Mich.App. 51, 201 N.W.2d 650. Rhode Island, on the other hand, had no provision in its constitution of like import as our Article III, § 26 to confront the court. *City of Warwick v. Warwick Regular Firemen's Ass'n,* 1969, 106 R.I. 109, 256 A.2d 206.

2.  Mich.Const. Art. IV § 48 reads as follows:
    "*Disputes concerning public employees.*
    Sec. 48. The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service."

■ The trial court ruled that the provision of SDCL 9-14A-18 was separable or severable. Plaintiff has likewise challenged the adequacy of the remainder of the act in such areas as SDCL 9-14A-2, which allows the fair hearing board "to hear and determine the dispute," the lack of standards to support a lawful delegation of authority, as well as the question of separation of powers raised by SDCL 9-14A-19, which provides a rather novel "appeal de novo." With or without a severability clause, as set forth in SDCL 9-14A-22, this court has consistently upheld "any phase of the measure if the legislature would have enacted that much without the part the constitution rejects." *Nelson v. City of Miller*, 1968, 83 S.D. 611, 163 N.W.2d 533; *State ex rel. Mills v. Wilder*, 1950, 73 S.D. 330, 42 N.W.2d 891.

This court must agree that SDCL 9-14A-2 and the remainder of the act is so bound to the total concept of binding arbitration to be considered other than wholly interdependent. Certainly, within constitutional limits, the provisions of SDCL 3-18, which governs grievance procedures of public employees, would be made confusing by retention of the remaining sections of SDCL 9-14A. Clearly, the legislature would not have adopted this provision in direct conflict with other law had they known that SDCL 9-14A-18 would be declared void. We must declare the whole of the chapter as unconstitutional, *State ex rel. Mills v. Wilder*, supra; *Nelson v. City of Miller*, supra, and therefore, we affirm the trial court's judgment to the extent that it declares SDCL 9-14A-18 unconstitutional but reverse the trial court's determination that the remainder of SDCL 9-14A is constitutional as separable.

All the Justices concur.

MILLER, Circuit Judge, sitting for DUNN, Chief Justice, disqualified.