NETTIE BOTKIN v. P. M. CASSADY, Appellant.

**Personal Injuries:** INSTRUCTIONS. Refusal of an instruction in an action for a miscarriage and other injuries alleged to have been induced by threats, that if the plaintiff was suffering from uremia which might have brought on such injuries or if they might have occurred without the action complained of, she could not recover is reversible error, where she had previously had a miscarriage which might have caused the one in question and had been doing work which might have produced such a result.

SAME. An instruction "that it is a violation of law for any person to threaten with intent to compel another by threats to do an act against his or her will" is reversible error in an action by a woman to recover for physical and other injuries alleged to have been induced by threats. Code, 1873, section 3871, making it a misdemeanor to maliciously threaten an accusation of crime, has no application to a civil action based on such injuries.

**Impeachment.** The mere fact that a witness has taken morphine (there being no evidence as to the frequency with which he took it, or as to its effect upon his mind or memory) is immaterial as affecting his credibility, and his denial of the fact does not present a ground for impeachment.

SAME. Where a witness has given important testimony it is prejudicial error to permit his impeachment based on his denial of an immaterial matter.

**Trial:** OPENING CLOSED CASE. It is within the discretion of the court to permit plaintiff, at the close of the evidence on his behalf, and after defendant's motion for a verdict, to introduce further testimony.

**Plea and Proof:** MENTAL ANGUISH. Where allegations as to mental anguish caused by threats were coupled with allegations as to physical injury, and damages were asked in a gross sum, the petition did not present a case for a recovery for mental anguish alone.

*Appeal from Lyon District Court.*—HON. WILLIAM HUTCHINSON, Judge.

FRIDAY, OCTOBER 14, 1898.

PLAINTIFF states her cause of action in substance as follows: That on and for several years prior to October 28,

1893, she was the wife of Robert Botkin, by whom she was, on that day in an advanced stage of pregnancy; that on that day the defendant, a stranger to her, knowing her condition, did, negligently, willfully, wrongfully, maliciously, and in an angry and violent manner, when alone with plaintiff, threaten her that if she did not tell him the whereabouts of her husband, who was then absent, or that if she did not write to him and tell him where her husband was, he would cause her husband to be accused of larceny and convicted thereof, and imprisoned in the penitentiary; that by reason thereof plaintiff was greatly scared, nervous, and depressed in body and mind, and so continued for a long time, and that because thereof she miscarried, on or about the fifteenth day of November, 1893, and was delivered of a still-born child, in about the eighth month of development; that because of said facts plaintiff suffered great pain of body and mental anguish, was greatly damaged in her health, and her ability to again bear children was impaired, and she was put to one hundred dollars expense for medicines, medical attendance, and nursing. In an amendment she alleges she has been rendered nervous, generally weaker physically and mentally, her memory injured, and her vision made poorer, as a result of said scare, fright, and miscarriage, wherefor she prays judgment for ten thousand dollars. The defendant answered, denying generally; and, upon a trial to a jury, verdict and judgment were rendered in favor of the plaintiff for one thousand dollars. Defendant appeals.—*Reversed.*

*J. M. Parsons* and *McMillan & Dunlap* for appellant.

*E. Y. Greenleaf* for appellee.

GIVEN, J.—I.  The following facts appear without dispute: Prior to October 19, 1893, plaintiff and her husband resided at Little Rock, Iowa, where the defendant also resided, and was engaged in the banking business. Defendant held a chattel mortgage on certain property belonging to Robert

Botkin, plaintiff's husband. Robert left for parts unknown, leaving the plaintiff with but two dollars in money. Plaintiff went to the home of her sister, Mrs. Freet, near Lake Park, Iowa. Defendant, not finding the mortgaged property, sued out a warrant for the arrest of Botkin, and on said twenty-eighth day of October went to Mr. Freet's home, accompanied by a constable, in search of Botkin. While there, defendant asked for, and was granted, an interview with the plaintiff. They had a conversation in a room by themselves, other persons being in an adjoining room. It was in this interview that the alleged threats are claimed to have been made. Plaintiff was delivered of a stillborn child on November 15th following, in about the eighth month of development.

II. Appellant makes fifty-four assignments of error, most of which are not sufficiently specific to be entitled, under the rule, to consideration, and many of them are not argued. We will only notice such as, under the rule, we are required to consider.

Appellant argues a number of assignment on rulings in taking the testimony. We have examined these assignments with care, and reach the conclusion that, with one exception, they were either correct or without prejudice, and are not of sufficient importance to require notice. The exception is this: A Mrs. Adams was examined on behalf of the defendant, and gave important testimony as to statements made by the plaintiff. On cross-examination she was asked by plaintiff's counsel if she was addicted to the use of morphine, to which she answered, "I am not addicted to the use of morphine, and was not at that time." Plaintiff was called in rebuttal, and asked, "Do you know about Mrs. Adams using morphine or opium while you were there?" to which she answered, "Yes." She was then asked, "Did she use it regularly?" to which defendant objected as incompetent, immaterial, irrelevant, and not rebuttal. The objection was overruled, and the witness answered, "She took it every night while I was there." This evidence was manifestly called out.

on behalf of the plaintiff on the assumption that the use of morphine impairs the intellect, and clouds the memory, and therefore rendered the testimony of Mrs. Adams less reliable. There was no evidence as to the frequency or amount of morphine taken by Mrs. Adams, nor whether taken on prescription of a physician or as a cure for some ailment; neither was there any evidence that the mind or memory of Mrs. Adams had been affected by the use of morphine. The fact alone that she had taken morphine was immaterial, and her denial did not present a ground for impeachment, as a witness cannot be impeached upon an immaterial matter. *State v. Maxwell,* 42 Iowa, 208. In view of the importance of the testimony of Mrs. Adams, and the claim made by the plaintiff as to the weight to be given thereto because of the evidence as to her use of morphine, we think it was error prejudicial to the defendant to permit the plaintiff to testify as she did in rebuttal.

III. At the close of the evidence on behalf of the plaintiff, the defendant moved for a verdict, and thereupon, by leave of the court, the plaintiff was re-called, and gave further testimony as to the threats made to her. Appellant complains of this, but the matter was within the discretion of the court, and we do not think there was any abuse of that discretion. Appellant also complains in this connection of the overruling of his motion for a verdict, but, with this additional testimony given by the plaintiff, we think the motion was properly overruled.

IV. Dr. A. M. Vail called by the plaintiff, stated different causes that may produce miscarriage; among them, fright, fear, and uremia. He said: "It is often caused by a deteriorated condition of the kidneys. Uremia is a predisposing condition. Uremia is a suppressing of the urine back into the system. It may come from the kidneys. Kidney troubles are liable to result from using the water here in Lyon county. Our surface waters are unfavorable to health. A dropsical condition would be caused by suppression of the circulation of the blood, either through the

liver or kidneys. Predisposing causes to kidney troubles are from bad water, colds, injuries, exposure. It is quite apt to be the case that, when a woman has once had a miscarriage, she will never have live infants after that; and there are many instances in which it is not traced to any active cause, though we are most watchful for a second miscarriage along about the same period of pregnancy where the first miscarriage occurred, though it is not a usual rule. Uremia would be cause enough to produce a miscarriage or cause the death of the child." He further said: "Uremia is frequently found with pregnant women, which shows in a kind of bloating of the face, swelling of the glands of the eyes." Dr. C. S. Schultz, who waited on the plaintiff during her confinement in November, 1893, testified as follows: "When I first saw the patient, she was in convulsions. After she came out of the spasm she was in when I saw her, then I began making some inquiries as to her condition and general health previously. The physical symptoms, such as could be seen by the eye, showed that she had a dropsical condition. Her face was bloated. There was a puffiness around the eyes. The limbs were swollen. Her tongue was very much swollen, from having been bitten during the convulsions previous to the time that I had seen her. Her lips were also swollen from the same cause. The opinion that I came to after examining her was that she had what was known as 'uremia.' Uremia is a retention in the blood of the constituents of urine that are eliminated from the blood by the kidneys. Those dropsical symptoms would arise from the kidneys being affected. At the time I saw her, I think she must have been in this condition at least six weeks. I hardly think the condition could arise in less time than that. I think it would take six weeks to bring the condition she was in. This condition could produce miscarriage. I think she must have been affected with uremia considerably, or she would not have had convulsions. That indicated a very serious derangement. The convulsions would tend to cause expulsion of the fetus when a woman was about eight months along."

Defendant asked an instruction as follows: "(1) If you find that the plaintiff was suffering from uremia at the time of her miscarriage in the fall of 1893, and you further find that such uremia brought on, occasioned, and was the cause of the plaintiff's miscarriage or other injuries complained of, and that such miscarriage and other injuries complained of would have happened had plaintiff not had the interview with defendant at the Freets' home, then you should find for the defendant." This instruction was refused, and no equivalent given to the jury. In view of the evidence, we think the defendant was entitled to this or a similar instruction upon that subject. There was evidence that plaintiff had had a previous miscarriage, and that that would predispose to, or might cause, the miscarriage in question; also, that she had said that she had been doing kinds of hard work that might produce such a result. These matters might well have been brought to the attention of the jury in the instructions.

V. The court instructed: "That it is a violation of law for any person to threaten with intent to compel another so threatened, by threats, to do an act against his or her will," —evidently referring to section 3871 of the Code of 1873. That section provides: "If any person * * * maliciously threaten to accuse another of a crime, * * * with intent thereby * * * to compel the person so threatened to do an act against his will, he shall be imprisoned," etc. This is not a proceeding to punish under that statute, and we fail to see its application to this case. The defendant's liability does not depend upon his having violated that statute, but upon whether or not he made the threats and produced the result alleged. The same is true as to negligence, and we do not think appellant's complaint that the court failed to instruct upon that subject is well founded. The court instructed to the effect that if, by reason of the making of the alleged threats, plaintiff was caused to suffer mental anguish, "then you will

find for the plaintiff, though she suffered no physical injury, and though you do not find said miscarriage, if any she had, was the result of said threats, if any were made." This action was evidentlly not brought to recover for mental anguish alone. The allegations as to mental anguish are coupled with the allegations as to physical injury; and, whatever the right of the plaintiff might be to recover for mental anguish alone, such a case is not presented in the petition, and the instruction as given was erroneous. Other errors discussed and not noticed herein are not likely to arise on a re-trial. For the errors pointed out, the judgment of the district court is REVERSED.

LADD, J. took no part.