GREAT NORTHERN RAILWAY COMPANY, Appellant, v. GRAFF, et al, Respondents, (BREKKE, et al, Interveners)

(28 N. W.2d 77)

(File No. 8883. Opinion filed May 21, 1947.)

**T. J. Slattery,** of St. Paul, Minn., and **H. F. Chapman,** of Sioux Falls, for plaintiff and Appellant.

**John R. McDowell,** State's Atty., and **Ernest Raley,** Asst. State's Atty., both of Sioux Falls, for defendants and Respondents.

**Stordahl & May** and **Roy E. Willy,** all of Sioux Falls, for intervening defendants and Respondents.

SMITH, J. A petition praying for the abandonment of the drainage district and works described in State v. Risty, 51 S. D. 336, 213 N. W. 952, was filed with the auditor of Minnehaha county and thereafter the Board of County Commissioners noticed it for hearing. Thereupon, plaintiff made application to the trial court for a writ of prohibition on the ground that Ch. 290, Laws 1939, pursuant to which the Board of County Commissioners was proceeding, was unconstitutional and void. An alternative writ was issued. Subsequently an order was entered by the court quashing the writ so issued. The plaintiff has appealed.

The background of the controversy should be sketched. Section 6 of Art. XXI of the Constitution of South Dakota provides: "The drainage of agricultural lands is hereby declared to be a public purpose and the legislature may provide therefor, and may provide for the organization of drainage districts for the drainage of lands for any public use, and may vest the corporate authorities thereof, and the corporate authorities of counties, townships and municipalities, with power to construct levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this state, by special assessments upon the property benefited thereby, according to benefits received."

By Ch. 134, Laws 1907, and by amendatory enactments (cf. SDC 61.10) the legislature authorized the board of county commissioners of any county to establish and con-

struct drainage if found to be conducive to the public health, convenience or welfare, or necessary or practicable for draining agricultural lands, and to assess the cost thereof upon property benefited by the drainage.

The natural course of the Big Sioux River forms a loop around the city of Sioux Falls. In 1916 the Board of County Commissioners established and constructed a system of drainage the works of which include a diversion ditch, 2½ miles long, and about 75 feet wide across the opening of that loop. This ditch includes a closed concrete spillway which drops the water a distance of about 80 feet.

At the time this drainage was established and constructed the statutes provided that such works "shall * * * be under the charge of the board of county commissioners and their successors in office and be by them kept open and in repair." § 20, Ch. 134, Laws 1907, and further provided that "For the cleaning and maintenance of any drainage provided herein, assessments may be made upon the land owners affected in the proportions determined for such drainage at any time upon the petition of any person setting forth the necessity thereof, and after due inspection by the board of county commissioners. * * *" § 13, Ch. 134, Laws 1907.

At that time the statutes made no provision for the abandonment of the ditch, or for the abolishment of an unincorporated drainage district.

Property owned by plaintiff was assessed for more than $16,000 to defray the cost of the drainage. We understand it to be conceded that if the described diversion ditch and spillway and other portions of the drainage works are not maintained, plaintiff's property and other property in Sioux Falls may suffer serious flood damage.

The enactment assailed by these proceedings reads as follows:

"Section 1. Any intrastate drainage, drainage district and its works heretofore established or existing under the provisions of Sections 8458 to 8491 inclusive of the South Dakota Revised Code of 1919, as amended, or as revised in the South Dakota Code of 1939 at Sections 61.1001 to 61.1044

inclusive may be abandoned and abolished as herein provided.

"Section 2. Whenever a petition is filed with the county auditor, giving the names and last known post office addresses of all the owners of all the lands affected by any such drainage, and theretofore assessed for construction or maintenance of said drainage, and giving the legal description of each tract of land owned by the respective owners, praying for the abandonment of such drainage, drainage district and its works and stating the reasons therefor, signed by persons owning more than three-fourths of all of said lands; and accompanied by a bond with sufficient sureties to be approved by the county auditor, conditioned to pay all expenses incurred if the abandonment and abolishment is not finally accomplished, or if accomplished, are not paid out of surplus funds belonging to the drainage; the county auditor shall present said petition to the board of county commissioners at its next meeting, at which meeting the board shall fix a time and place for hearing said petition, and shall cause notice of said hearing to be mailed to each owner of land named in said petition at the address stated therein, and shall cause said notice to be published once in the official newspapers of said county, all at least ten days before said hearing.

"Section 3. At such hearing any person interested may appear and be heard; and if after a full hearing the board of county commissioners shall find that such abandonment and abolishment is for the best interests of the owners of more than one-half of all the lands described in the petition, the petition shall be granted and the drainage, drainage district and its works shall be abandoned and abolished. Otherwise the petition shall be denied.

"Section 4. When any petition is granted the board of county commissioners shall provide by resolution that all expenses incurred in the proceedings shall be paid out of any surplus funds in the county treasury belonging to said drainage and drainage district and that the balance of such funds shall be paid to the owners of the respective tracts of land in proportion to the assessment contributions of the

respective tracts, their present and former owners to said funds.

"Section 5. When the drainage and drainage district extends into more than one county the same petition shall be filed in each county and the boards of the respective counties shall act conjointly in fixing the time and place of hearing and in hearing and determining the petition and in ordering payments pursuant to Section 4 hereof, and notice of the hearing shall be mailed to each landowner as provided in Section 2 hereof and shall be published in the official newspapers of each county as provided in Section 2.

"Section 6. The abandonment and abolishment of any drainage, drainage district and its works, as herein provided, shall not affect the obligation or validity of any assessments theretofore made against any of the lands involved, nor the lien of such assessments, which shall be collected, enforced and applied in the same manner as if no abandonment or abolishment had taken place.

"Section 7. Any person deeming himself aggrieved by any order or determination of the board or boards of county commissioners may perfect an appeal to the Circuit Court of any county in which the drainage or portion thereof is located in the manner provided in Section 8469 of the South Dakota Code of 1919 or Section 61.1013 of the South Dakota Code of 1939 and the Circuit Court shall hear and determine the matter de novo." Ch. 290, Laws 1939.

The assignments assert two propositions, viz., (1) The quoted enactment is repugnant to the 14th Act of Amendment to the Constitution of the United States and to § 2, Article VI of the Constitution of South Dakota because it authorizes interference with vested rights and interests and the taking of property without due process of law, and (2) such enactment is inoperative and void because its provisions are indefinite, uncertain and unworkable.

The settled principle that courts will not declare a statute invalid on doubtful grounds is invoked by both of plaintiff's contentions. State v. Morgan, 2 S. D. 32, 48 N. W. 314; Warren v. Brown, 57 S. D. 528, 234 N. W. 38; State ex rel. Botkin v. Welsh, 61 S. D. 593, 251 N. W. 189; and 50 Am. Jur. 486.

In considering plaintiff's first contention we pause to declare what we deem to be plain, viz., that Ch. 290, Laws 1939, purports to do no more than to authorize the board of county commissioners, in described circumstances, by resolution, to abolish the "unincorporated drainage district," (cf. Davison County v. Watertown Tile & Construction Co., 47 S. D. 101, 196 N. W. 96, 97), and to abandon the drainage ditch and works. The act fails to reflect an intention to authorize the destruction of the drainage ditch and works or to deprive anybody of the use thereof for drainage purposes. The act provides a procedure for divesting the board of commissioners of power to levy future assessments upon the property in the unincorporated drainage district, and consequently for divesting it of the power to maintain and repair the drainage ditch and works.

The constitutional vice in the act according to plaintiff is that it requires the abolishment of the tax district and the consequent power to maintain and repair the ditch if the board finds such a course in the interest of the owners of a major portion of the land of the district, irrespective of the resulting damage to the property and invasion of the vested rights and interests of other landowners in the district.

This view of plaintiff finds support in the holding of the Nebraska court in the case of Ritter et al. v. Drainage District No. 1, 137 Neb. 866, 291 N. W. 718, 720. In reversing a trial court which held an act authorizing the dissolution of an incorporated drainage district constitutional, the Nebraska court said:

"The written promise or legal obligations of the landowners to pay assesments for drainage improvements and the statutory duty of the district to construct the drainage system, keep the drains in repair, and levy the necessary taxes or assessments to pay the expenses of drainage, and the performance of duties and obligations by both district and landowners, created contractual relations through which the landowners acquired vested property rights in the improvement of their lands by drainage. The system of drainage contemplated by the legislature did not mean a plan furnishing 50-year drainage for some landowners in the district and denying the same protection to others on equal

footing. A law text reads thus: 'It has become the established law that a legislative enactment, in the ordinary form of a statute, may contain provisions which, when accepted as the basis of action by individuals or corporations, become contracts between them and the state within the protection of the clause of the federal Constitution forbidding impairment of contractual obligations [article 1, § 10].' 6 R. C. L. 338, sec. 331. See, also, 12 C. J. 969.

"* * * The drainage act, the proceedings thereunder and the payments by the landowners for drainage as the facts are alleged in the petition, bring the case at bar within the foregoing principle applicable to contracts arising from legislative enactments." And see United States v. Florea, D. C., 68 F. Supp. 367.

The defendants on the other hand assert that the legislature could arbitrarily withdraw the power of the board of commissioners to maintain the described drainage without invading any right of the landowners of the district, and that whatever damage might result to plaintiff's property therefrom would be consequential and would not constitute a taking of property within the contemplation of the cited constitutional provisions. This view finds support in the cases.

In the case of In re Koshkonong Mud Creek Drainage Dist., 197 Wis. 261, 221 N. W. 864, 866, dealing with an attack upon a legislative act authorizing the dissolution of an incorporated drainage district, the court wrote as follows:

"It might be sufficient to dispose of this entire matter upon the statement just above made; namely, that such a creation of the Legislature is within no federal or state constitutional inhibition preventing the Legislature, which alone has the power or right to blow the breath of life into it, to also, when it will, and as it will, blow the same out again; but in view of the earnestness with which the attack is made upon this amendment so authorizing dissolution proceedings, we shall take up some of the detailed objections.

"* * * It is further urged that persons joining in the creation of the district, either as voluntary petitioners or otherwise, became clothed with certain property rights in connection with the assessments made, money paid, and

work done and benefits resulting to the property involved, and that such property rights cannot thereafter be destroyed by any dissolution proceedings.

"We know of no recognized theory in the law upon which it can be said that, in the exercise of its police power within the field of which it is conceded these are, the state confers upon persons directly or indirectly affected thereby a property right to have a perpetual continuing of such particular police power or any right to object to the withdrawal of such prior particular exercise of that power except upon compensation. To uphold appellants' contention in this regard, however, would be to overlook the plain and wide distinction repeatedly declared to exist between that which is done under the legislative power of eminent domain and that which is done in the exercise of its police power."

And it was further held therein, "That the existing law at the time of the organization of the Koshkonong district in 1909 contained no express provision for dissolution, such as is found in section 89.665, Stats., quoted above, is immaterial, for the possibility of such a provision must be deemed to have surrounded the law at all times." Similar views were expressed by the Illinois court in Hollenbeck v. Detrick, 162 Ill. 388, 44 N. E. 732.

■■ In making provision for this public drainage, and for its maintenance and repair, the state exerted its police power. Chicago, B. & Q. R. Co. v. State of Illinois ex rel, Drainage Commissioners, 200 U. S. 561, 26 S. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175. It was the exercise of that power which furnished the occasion for calling into play such other powers of government as were employed. As we have indicated supra, the ultimate effect of the challenged act is to withdraw from the county commissioners, as an arm or agency of the state, the power to continue to maintain the drainage. In other words, it provides for a discontinuance of a particular exercise of the police power. We find ourselves in agreement with the Wisconsin court. We are unable to discover a principle which invests a citizen or landowner with a property right in the continued exercise of the state's police power, or which declares that a particu-

lar exercise thereof can only be discontinued upon compensation for damages which may result therefrom. We do not think plaintiff acquired a contractual right to the maintenance of the drainage works. We entertain the view that whether a contract may be held to arise from action on the faith of a statute depends upon the intention of the legislature. Dodge v. Board of Education, 302 U. S. 74, 58 S. Ct. 98, 82 L. Ed. 57. The above-cited drainage statutes in force as of the time of the establishment of this drainage fail to indicate an intention on the part of the legislature to tender a proposal by the state or any of its agencies to landowners of drainage districts established thereunder that ditches and works once established will be perpetually maintained. The legislature did not contemplate a contractual relation. It provided for the establishment of drainage districts contrary to the will and desire of many of those whose land would be included therein.

We are of the opinion that these statutes but declare a policy to be pursued at the will of the legislature. Because a change of policy is unwise and may therefore disappoint the reasonable and just expectations of citizens or because it may result in incidental damage to property would not render the repealing or amendatory act repugnant to the cited constitutional provisions. State ex rel. Sharpe v. Smith, 58 S. D. 22, 234 N. W. 764. For these reasons we are not convinced that, in a constitutional sense, the questioned enactment either authorizes the taking of property or the interference with vested rights.

We turn to plaintiff's second contention, viz., that the act is inoperative and void for uncertainty. In presenting this contention plaintiff asks a number of questions and then states, "All of these and many more very real legal questions clamor for answer, and the County Auditor is only an administrative officer and the County Commissioners are not trained judges. True, the County Board is presumed to act in a quasi-judicial manner, but there is no express requirement that it shall pass upon any of these matters." Among others, the questions asked are, "Who are the 'owners,' say, of city streets and section line highways which are part of township systems and county systems and state

systems? * * * How much more than agricultural acres is included in 'land' when considered in the light of the statutory system of spreading assessment? * * * Who determines whether three-fourths of 'all of said lands' is owned by signers of the petitions, and how is the determination made and when, and does any protestant have a right to be heard relative thereto—all bearing in mind that the petition must be presented to the County Board at its next meeting after filing with the Auditor?"

Surrounding almost every exercise of quasi-judicial power are judicial questions which demand answer if interested parties' rights are to receive adequate protection. Although the administrative agency may be required to rule on such questions in the first instance, they must remain undecided until presented as an issue before the courts. To hold that the existence of such a question, or a large number of such questions, renders an act clothing an administrative officer or board with quasi-judicial power inoperative and void would be to strike down practically all such enactments. The act under consideration through its appeal section provides an interested party with a ready and convenient means of presenting such questions to a competent tribunal. We hold the contention untenable.

The judgment of the trial court is affirmed.

WOHLHETER, Circuit Judge, sitting for POLLEY, J.

ROBERTS and RUDOLPH, JJ., and WOHLHETER, Circuit Judge, concur.

SICKEL, P.J., dissents.

SICKEL, Presiding Judge (dissenting).

This case is a companion to the case of the City of Sioux Falls against the same defendants and the same intervener. City of Sioux Falls v. Graff, 71 S. D. 608, 28 N. W.2d 84. The cases were presented and submitted together in the circuit court and likewise in this court. Since the two cases involve identical questions the opinion in this case will necessarily rule the Sioux Falls case, and I shall therefore refer to some of the facts in both cases only to show the consequences of the rule adopted by the majority of the court in this case.

Drainage Ditch Number 1 was established by the county commissioners of Minnehaha county in 1907. Ditch Number 2 was built in 1910. The spillway at the south end of Ditch Number 1 was washed out in 1916. The damage was repaired and extensive improvements were made at that time. The costs were assessed against the land in the area according to the benefits. The assessments paid by the Great Northern Railway Company amounted to $16,464.66 for benefits to its railroad lines, engine house and yards, and assessments paid by the City of Sioux Falls were in excess of $70,000 for benefits to several hundred acres of land owned by the city and used for municipal purposes. The law of 1907 made it the duty of the county commissioners to keep the drains open and in repair, and the burden of paying the cost was imposed upon the property assessed for the construction of the drains. Chapter 290, S. L. of 1939, authorizes the county commissioners to abandon and abolish drainage districts on petition signed by the owners of three-fourths of the land affected by the drainage and assessed for the construction of the drains, on a finding that it is for the best interests of the owners of more than half of the land that the district shall be abandoned and abolished. These ditches have been built and are serving the purpose of their construction. All costs of construction and maintenance have been assessed and paid to date. Obviously, the only purpose of abandoning and abolishing the district is to escape the future burden and expense of keeping the drains open and in repair.

The appellants, Great Northern Railway Company and the City of Sioux Falls, contend that they have acquired vested rights in the drain; that the continued maintenance of the drain is necessary for the protection of those rights; that such protection is not provided or assured by the law of 1939, and that therefore that statute is unconstitutional. The circuit court upheld the constitutionality of the 1939 law, and the majority opinion in this case affirms the circuit court saying: "We are unable to discover a principle which invests a citizen or landowner with a property right in the continued exercise of the state's police power, or which declares that a particular exercise thereof can only

be discontinued upon compensation for damages which may result therefrom." The opinion concludes that the 1939 statute neither authorizes the taking of property nor the invasion of vested rights.

When two or more parties construct the drainage ditch jointly over the land of all, by apportioning the cost among the parties benefited, each party grants to the others the right to go upon his land to construct the ditch, and no party has the right to dam the ditch or otherwise deprive the others of the use of the ditch to the extent of their interest in it. Munch v. Stetler, 109 Minn. 403, 124 N. W. 14, 25 L. R. A., N. S., 727, and note, 134 Am. St. Rep. 785; Gooch v. Sullivan, 13 Nev. 78; Raritan Water Power Co. v. Veghte, 21 N. J. Eq. 463; Robinson v. Luther, 140 Iowa 723, 119 N. W. 146; Hall v. Pfnister, 95 Ill. App. 159. When a ditch is so constructed, used and maintained over a long period of time the law implies a permanent improvement, regardless of any express agreement to that effect. Brown v. Honeyfield, 139 Iowa 414, 116 N. W. 731. The right and interest of each landowner, so created, was recognized by the common law as a distinct estate, a property right in the land benefited. United States v. Florea, D. C., 68 F. Supp. 367.

The legislature may provide for the organization of drainage districts for the drainage of lands for any "public use," and for payment of the cost of construction and repair by special assessment "upon the property benefited thereby, according to the benefits received." S. D. Const. Art. XXI, § 6. The establishment of drainage districts "promotes the public interest." There is a "public advantage in providing a general plan of reclamation by which wet lands throughout the state may be opened to profitable use." O'Neill v. Leamer, 239 U. S. 244, 36 S. Ct. 54, 58, 60 L. Ed. 249. By organizing drainage districts under state regulation "adjoining land, held by various owners in severalty, and in the improvement of which all have a common interest, but which, by reason of the peculiar natural condition of the whole tract, cannot be improved or enjoyed by any of them without the concurrence of all, may be reclaimed and made useful to all at their joint expense." Wurts v. Hoagland, 114 U. S. 606, 5 St. Ct. 1086, 1090, 29 L. Ed.

229. The organization of drainage districts is a public purpose: "Statutes authorizing drainage of swamp lands have frequently been upheld independently of any effect upon the public health, as reasonable regulations for the general advantage of those who are treated for this purpose as owners of a common property. (Citations) If it be essential or material for the prosperity of the community, and if the improvement be one in which all the landowners have to a certain extent a common interest, and the improvement cannot be accomplished without the concurrence of all or nearly all of such owners by reason of the peculiar natural condition of the tract sought to be reclaimed, then such reclamation may be made, and the land rendered useful to all, and at their joint expense. In such case the absolute right of each individual owner of land must yield to a certain extent, or be modified by corresponding rights on the part of other owners for what is declared upon the whole to be for the public benefit." Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 65, 41 L. Ed. 369.

These drainage districts are created by statute to deal with rights of property "which have their roots deep in the common law." The district does not hold these property rights but operates them for the public welfare and for the benefit of landowners. "But it will be clear that the levying of assessments in a Drainage District, particularly one which has erected dikes for flood protection, is a property right which belongs to the aggregate of the owners within the boundaries and is simply entrusted to the District in order to permit collections and payments to be made under authority of the state. The public interest in reclamation and protection against flooding of agricultural land dictates this solution." United States v. Florea, D. C., 68 F. Supp. 367, 371. Since the land continues to be private property permanently devoted to private use, the increases in value resulting from the location and establishment of the ditches are private rights paid for by the owners according to the benefits received. Such rights are not subject to interference or impairment by the abandonment of the districts without just compensation. Tussing v. King, 65 Ohio St. 10, 60

N. E. 986; Ritter v. Drainage Dist. No. 1, 137 Neb. 866, 291 N. W. 718; United States v. Florea, supra.

The majority of the court adopts the rule announced in Re Koshkonong Mud Creek Drainage Dist., 197 Wis. 261, 221 N. W. 864, to the effect that there are no vested property rights in the continued existence of a law, enacted in the exercise of the police power of the state. That rule of law has some notable exceptions, among the most common of which is that "rights which have vested under the law cannot be divested by its repeal." 16 C. J. S., Constitutional Law, § 223. Bondholders have a vested interest under a drainage law. The law implies an obligation to continue assessments until the bonds are paid, and no repeal of the law nor abandonment of the district can deprive them of this right. If the law implies an obligation to continue assessments on the property in the drainage district for the purpose of paying bonds, the law must likewise imply an obligation to maintain the drain as a permanent system, and to levy the necessary assessments therefor. It is common knowledge that without such maintenance the drainage system would soon be of little value. Ritter v. Drainage Dist. No. 1, 137 Neb. 866, 291 N. W. 718; United States v. Florea, supra; Tussing v. King, supra.

In my opinion the failure to continue the protection of the drainage system now provided by statute would deprive the appellants of their property without due process of law, contrary to the Fifth Amendment to the Constitution of the United States and Art. VI, § 2, of the Constitution of South Dakota.