BERDAHL, Appellant v. GILLIS, Respondent

(136 N.W.2d 633)

(File No. 10266. Opinion filed September 2, 1965)

438

**Christopherson, Bailin, Wilds & Bailey** and **Mead Bailey,** Sioux Falls, for petitioner-appellant.

**Frank L. Farar,** Atty. Gen., **John Dewell,** Asst. Atty. Gen., Pierre, for respondent.

RENTTO, J. The legislature in its 1965 session broadened the base of our sales tax by extending it to certain services and professions. The petitioner, a citizen, resident and taxpayer of the state, licensed to practice law therein and engaged in the active practice thereof, claiming that such act is unconstitutional, on May 13, 1965, instituted this proceeding for a writ of prohibition to restrain the respondent from taking any action thereunder. His right to maintain the proceeding is not questioned. On June 17, 1965 the trial court held the law to be constitutional and denied his application. This appeal is from that action.

The act in question, H.B. 743, now Ch. 296, Laws of 1965, approved on March 18th and effective on July 1st provides:

"Section 1. There is hereby imposed a tax at the same rate as that imposed upon sales of tangible personal property in this state upon the gross receipts of any person from the engaging or continuing in the practice of any profession or of any business in which the service rendered is of a professional, technical or scientific nature and is paid for on a fee basis, or by a consideration in the nature of a retainer except it shall not apply to those persons engaged in the practice of the healing arts and veterinarians as the same are defined in SDC 1960 Supp. 27.0401 and SDC 40.0201, and who are licensed by an examining board under the laws of the state of South Dakota.

"Section 2. There is hereby imposed a tax at the same rate as that imposed upon sales of tangible personal property in this state upon the gross receipts of any person from engaging or continuing in any of the following businesses or services in this state: Abstractors; accountants; architects; barbers; beauty shops; blacksmith shops; car washing; dry cleaning; dyeing;

exterminators; garage and service stations; garment alteration, cleaning and pressing; janitorial services; laundry and laundromats; linen and towel supply; photography; photo developing and enlarging; tire recapping; welding and all repair services; provided, however, that the specific enumeration of businesses and professions made in this section is not intended to, in any way, limit the scope and effect of section 1 of this Act.

"Section 3. The exemptions from sales tax relative to sales of tangible personal property shall apply to services included in this Act.

"Section 4. Those persons whose services are taxed herein may add the tax under this section, or the average equivalent thereof, to his price or charge.

"Section 5. All of the persons subject to the tax imposed by this Act shall be deemed retailers as defined in South Dakota Code 57.31 and the definitions and applications provided in that chapter, and the amendments thereto, shall apply to this Act, together with all of the provisions of South Dakota Code 57.33 as amended, relating to the Retail Occupational Sales Tax ascertainment, collection, and adjustments."

His claim here is that the law is unconstitutional on its face for these reasons:

(1) It lawfully delegates legislative power to the Commissioner of Revenue

(2) Its language is so vague as to deny due process of law

(3) The classifications thereunder are arbitrary, unreasonable and constitutionally offensive

While his reply brief mentions a letter by the Commissioner in the nature of an interpretation of the act it should be noted that nothing of this kind was before the trial court. Consequently, it is not before us. Our function is limited to a review of the case presented to the trial court.

 We think it proper to first set out some of the general principles in the light of which we must approach the specific problems here presented. As was stated by this court in State ex rel. Botkin v. Welsh, 61 S.D. 593, 251 N.W. 189:

"This case, of course, falls under the general rule, so axiomatic as doubtless to be unnecessary of statement, that every presumption is in favor of the validity and propriety of legislative action, and that no statute should be held unconstitutional by any court unless its infringement of constitutional restrictions is so plain and palpable as to admit of no reasonable doubt. * * * As has been so well said by Mr. Justice Holmes: 'Great constitutional provisions must be administered with caution. Some play must be allowed for the joints of the machine, and it must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts.' * * *

"The application of this salutary doctrine to the consideration of legislation in the tax field is of peculiar importance. The taxing power inheres in sovereignty and, as we have previously taken occasion to emphasize * * * the existence and exercise of that power are absolutely essential to the preservation of the state. The exercise of the taxing power is vested, under our governmental structure, in the legislative department, and its conduct in that field should be sustained and supported by the courts to the utmost possible limits, and restricted or denied most cautiously and only in the clearest cases. No state can exist without the provision of adequate revenues, and the need for revenue and the practical possibility of securing it from various and sundry sources are conditioned by the social and economic situation of the state and not by constitutional theory. The courts should, and they do, go a great way to sustain the validity of legislative action intended to raise revenue.

" 'The power to impose taxes is one so unlimited in force and so searching in extent, that the courts scarcely venture to .declare that it is subject to any restrictions whatever, except 'such as rest in the discretion of the authority which exercises it. It reaches to every trade or occupation; to every object of industry, use, or enjoyment; to every species of possession; and it imposes a burden which, in case of failure to discharge it, may be followed by seizure and sale or confiscation of property. No attribute of sovereignty is more pervading, and at no point does the power of the government affect more constantly and intimately all the relations of life than through the exactions made under it.' * * * "The state courts likewise, as revealed even by the most cursory examination of their decisions, have universally been diligent to 'sustain the validity of tax legislation wherever the possibility existed. Such also has been the language and the trend of our own decisions."

■ ■ As is made clear in the above quoted statements the power to tax is essentially a legislative function. However, there are circumstances under which there may be delegated to an administrative officer, board or tribunal, some aspects of the taxing process, if, in making such delegation, the legislature retains sufficient and proper control over those aspects which are not delegable, and if a sufficient guide or standard is laid down by the legislature for the guidance of the administrative officials. 57 Am.Jur., Taxation, § 144 and § 148; 84 C.J.S. Taxation § 8.

By SDC 57.0101(16) it was made the duty of the Secretary of Finance and he was given power:

"To construe the tax laws of the state whenever requested by any officer acting under such laws; to see that all taxes due the state, counties, municipalities, and other local subdivisions are collected, and to perform such other duties and exercise such other powers as may be provided by law."

In SDC 1960 Supp. 57.01A05 these duties and powers were transferred to the Commissioner of Revenue.

In accordance with the general rule we have often held that the legislature may delegate to an administrative body or officer the duties of carrying out its enactments if it adopts a clearly declared legislative policy and lays down understandable standards to guide the administrative action. Affiliated Distillers Brands Corp. v. Gillis, 81 S.D. 44, 130 N.W.2d 597. The petitioner apparently does not claim that the act does not contain a clearly declared legislative policy, but he does urge that section 1 of the act does not contain sufficient standards as to the gross receipts which are taxable nor as to those that are exempt. From this he proceeds to argue that the Commissioner in carrying out the act would be legislating. We do not agree.

As is so common in many areas of the law the rule as to understandable guidelines is easy of statement, but more difficult in its application. In the fairly recent past we have held rather generalized and imprecise statements to be sufficiently definite standards for the administrative action authorized. The following are indicative of our attitude in applying the rule: Relieving an employer of requirements of the Workmen's Compensation Law on proof of his solvency and financial ability to pay the compensation required by the act, Utah Idaho Sugar Co. v. Temmey, 68 S.D. 623, 5 N.W.2d 486; disapproving articles of incorporation of a bank if public convenience and necessity do not justify its organization, Wall v. Fenner, 76 S.D. 252, 76 N.W. 722; permitting the issuance of revenue bonds by the Board of Regents for the construction of dormitory or apartment housing where the same are necessary and feasible. Boe v. Foss, 76 S.D. 295, 77 N.W.2d 1. In Affiliated Distillers Brands Corp. v. Gillis, supra, relied on by petitioner, we struck down the Commissioner's administrative action not because of the insufficiency of standards, but because of the absence of any standards.

 Section 1 of the act imposes the tax upon "the gross receipts of any person from the engaging or continuing in the practice of any profession or of any business in which the serv-

ice rendered is of a professional, technical or scientific nature and is paid for on a fee basis, or by a consideration in the nature of a retainer * * *". It further provides that the tax shall not apply "to those persons engaged in the practice of the healing arts and veterinarians as the same are defined in SDC 1960 Supp. 27.0401 and SDC 40.0201, and who are licensed by an examining board under the laws of the state of South Dakota." We think this language sufficiently definite so as to afford the Commissioner practical standards for applying the act without exercising legislative power.

Petitioner is critical of the act because it is not more explicit in stating who are subject to the act and who are exempt. He poses many hypothetical situations in the future operation of the act and suggests that the Commissioner in resolving them would be exercising the legislative function. Obviously the law would be easier of administration if it were more precise, but with the complexities of present day social and economic problems this is not always possible or practical. "Occupation and privilege tax statutes are frequently lacking in any extended definition of the precise occupation or privilege subject to taxation, and it consequently devolves upon the courts to find a practical definition." 51 Am.Jur., Taxation, § 320.

Although the Commissioner may be required to make such determinations in the first instance, they must remain undecided until presented as an issue before the courts. Great Northern Ry. Co. v. Graff, 71 S.D. 595, 28 N.W.2d 77. See also In re Ebeling's Estate, 169 Wis. 432, 172 N.W. 734, 4 A.L.R. 1519. The Commissioner's interpretation and construction of the terms of the statute are only an administrative guess at a judicial question. Utah Hotel Co. v. Industrial Commission, 107 Utah 24, 151 P.2d 467, 153 A.L.R. 1176. Consequently, we think it clear that when the Commissioner interprets the statute he is not legislating.

Mere difficulty in ascertaining the meaning of a statute, or the fact that it is susceptible of different interpretations will not render it void. An act, although somewhat vague and uncertain, or not as clear as it might be, may nevertheless be

444

valid, unless it is so imperfect as to render it impossible to execute it or to ascertain the legislative intent. 82 C.J.S. Statutes § 68. In People ex rel. Christensen v. Board of Education of School Dist. No. 99, 393 Ill. 345, 65 N.E.2d 825, the rule is stated thus: "It is only when the legislative act is so indefinite and uncertain that the courts are unable, by accepted rules of construction, to determine with any reasonable degree of certainty what the legislature intended, or when it is so incomplete and inconsistent that it cannot be executed, that constitutes such indefiniteness and uncertainty that will invalidate the law." Many cases supporting this statement are noted under Statutes, key 47 and 49 in the American Digest System. Viewing the act in the light of these rules we are unwilling to hold that it is so vague as to be invalid.

In support of his contention that the act is fatally defective because .of vagueness, petitioner relies heavily on State v. Dove, 75 S.D. 460, 67 N.W.2d 917. In that case the defendant was under sentence of death on his conviction of the crime of first degree kidnapping. It is apparent from the opinion that the court in holding the statute invalid because of the uncertainty of its language was concerned with the punishment involved. In the case at bar the trial judge stated in his memorandum opinion that in the face of the principles of construction above quoted from the Botkin v. Welsh case he "would not apply the rule stated in State v. Dove". We concur.

Moreover, in State ex rel. Dunker v. Spink Hutterian Brethren, 77 S.D. 215, 90 N.W.2d 365, we avoided applying that rule with the comment that because of the penalty involved in the Dove case "A very strict application of the rule of definiteness and clarity was properly required." After stating that the rule quoted above from People ex rel. Christensen v. Board of Education, is undoubtedly applicable to tax statutes, 51 Am.Jur., Taxation, § 303, goes on to observe "When, however, it comes actually to holding a particular tax statute invalid on the ground of its uncertainty, vagueness, or inconsistency, the courts exhibit some reluctance in doing so".

 This brings us to petitioner's remaining contentions which were dealt with by the trial judge in his memorandum opinion as follows:

"Petitioner contends that the exclusion of persons engaged in the practice of the healing arts and veterinarians as provided by Section 1 is an unconstitutional grant of immunity from taxation. The state Bill of Rights does require equal treatment of persons, prohibits the taking of property without due process of law, requires all taxation to be equal and uniform, and provides that no law shall be passed granting to any citizen or class of citizens any privileges or immunities which upon the same terms shall not equally belong to all citizens. Constitution of South Dakota Art. VI, Sections 1, 2, 17 and 18. But the Bill of Rights does not prohibit the legislature from taxing occupations and the privilege to engage in a profession or business measured by the gross receipts thereof and providing for reasonable exemptions from such tax.

"Article XI, Section 2, of the state Constitution provides among other things: 'Taxes may be imposed upon any and all property including privileges—and licenses to do business in the state. Gross earnings—may be considered in taxing any and all property—. The legislature is empowered to impose taxes upon incomes and occupations—and reasonable exemptions may be provided'.

"The tax imposed by H.B. 743 is a tax upon occupations within the meaning of Art. XI, Section 2, and is equivalent to a tax upon the privilege of engaging in the occupations taxed. State v. Welsh, supra. See also State v. Van Daalen, 69 S.D. 466, 11 N.W.2d 523.

"Are the exemptions from the tax of practitioners of the healing arts and veterinarians licensed by the state reasonable? In State v. Welsh, supra, 61 S.D. at 641, 251 N.W. at 210 our Supreme Court said:

" 'It is well agreed that the legislature may select some occupations for taxation and not others, and may classify for the purpose provided the classification is reasonable and not arbitrary and bears some relation to the subject in hand.' And at page 211 of the opinion our Court quoted from the United States Supreme Court as follows:

" 'The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction—. A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation of taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law. It is not the function of this Court—to consider the propriety or justness of the tax—. Our duty is to sustain the classification adopted by the legislature if there are substantial differences, between the occupations separately classified. Such differences need not be great.'

"In light of these principles recognized by our Court it cannot be held that the classifications and exemptions provided by the Act are arbitrary and unreasonable. The wisdom thereof and the policy in making the classifications were for the legislature. Courts have no concern with the wisdom or expediency of tax legislation.

"As pointed out by the petitioner Section 1 of the statute imposes the tax upon fees and retainers received by persons rendering professional, technical or scientific services but not upon wages or salaries received by persons employed to render such services. By its class-

ification the legislature has chosen to tax the privilege of practicing a profession for a fee or retainer and not the privilege of being employed in rendering such services for a wage or a salary. This classification is not arbitrary and unreasonable and is consistent with the other provisions of the statute."

We share these views and adopt them as our own.

Affirmed.

All the Judges concur.