Michael SPECHT and the Sioux Falls Firefighters Association, Local 814, Applicants and Appellees,

v.

The CITY OF SIOUX FALLS, Appellant.

No. 18568.

Supreme Court of South Dakota.

Considered on Briefs May 24, 1994.

Decided Jan. 25, 1995.

Thomas K. Wilka of Hagen, Wilka & Archer, P.C., Sioux Falls, for applicants and appellees.

Roger A. Schiager, City Atty. and Thomas L. Anderst, Asst. City Atty., Sioux Falls, for appellant.

AMUNDSON, Justice.

City of Sioux Falls appeals the trial court's peremptory writ of prohibition and declaratory judgment holding that SDCL ch. 34–11B is unconstitutional. We affirm.

## FACTS

The 1992 South Dakota Legislature enacted SDCL ch. 34–11B authorizing municipalities to establish a regional emergency medical services authority (EMS authority). After public hearings, the Sioux Falls City Commission (Commission) passed Resolution 408–92 creating the Sioux Falls Regional Emergency Medical Services Authority (SFREMSA). On January 4, 1993, Commission appointed commissioners to SFREMSA and, soon thereafter, it was issued a certificate of incorporation from the South Dakota Secretary of State. On July 19, 1993, Commission passed Resolution 241–93 authorizing SFREMSA to borrow funds.

On July 30, 1993, Michael Specht and the Sioux Falls Fire Fighters Association (Specht)[1] served the City of Sioux Falls (City) with an alternative writ of prohibition challenging Resolution 241–93. At that time, City was also served with an application for writ of prohibition alleging, among other things, that SDCL ch. 34–11B was unconstitutional.

Specht notified the South Dakota Attorney General of the constitutional challenge to SDCL ch. 34–11B and the State was allowed to appear as amicus curiae by the trial court.[2]

Specht challenged SFREMSA and SDCL ch. 34–11B which authorized it under Article III, § 26 and § 1, of the South Dakota Constitution.[3] Specht argued SFREMSA and its enabling statutory scheme (SDCL ch. 34–11B) violates Article III, § 26, because it creates a special commission whose powers, defined by SDCL ch. 34–11B, involve an improper delegation of municipal functions. After considering written and oral argu-

1. Specht is a resident and taxpayer of City. He is also the president of the Sioux Falls Firefighters Association, Local 814.

2. The South Dakota Attorney General appeared at the trial court level but after receiving appellate briefs from Specht and City decided not to file an appellate brief.

3. S.D. Const. art. III, § 26, provides:
   The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property, effects, whether held in trust or otherwise, or levy taxes, or to select a capital site, or to perform any municipal functions whatever.
   S.D. Const. art. III, § 1, provides:
   The legislative power of the state shall be vested in a Legislature which shall consist of a senate and house of representatives, except that the people expressly reserve to themselves the right to propose measures, which measures the Legislature shall enact and submit to a vote of the electors of the state, and also the right to require that any laws which the Legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions: provided, that not more than five per centum of the qualified electors of the state shall be required to invoke either the initiative or the referendum.
   This section shall not be construed so as to deprive the Legislature or any member thereof of the right to propose any measure. The veto power of the Executive shall not be exercised as to measures referred to a vote of the people. This section shall apply to municipalities. The enacting clause of all laws approved by vote of the electors of the state shall be: "Be it enacted by the people of South Dakota." The Legislature shall make suitable provisions for carrying into effect the provisions of this section.

ments, the trial court agreed. Accordingly, the trial court issued a peremptory writ of prohibition and independently ruled SDCL 34–11B unconstitutional. City appeals.

## ISSUES

I. Did the trial court use the proper standard of proof in reaching its decision?

II. Was the trial court correct in ruling SDCL ch. 34–11B unconstitutional?

## DECISION

### Issue I

Did the trial court use the proper standard of proof in reaching its decision?

City contends the trial court did not use the correct standard in determining the constitutionality of SDCL ch. 34–11B. City claims the trial court improperly employed Utah's burden of proof in determining the constitutionality of SDCL 34–11B, since the trial court cited Utah cases.[4]

City's argument lacks merit. Nothing in the record indicates that the trial court used Utah's burden of proof in determining constitutionality. The trial court only referred to Utah's balancing approach to analyze whether prehospital emergency medical service is a "municipal function" and whether the activities of SFREMSA fall within that category. The trial court referred to Utah's precedent because Utah has a constitutional provision similar to South Dakota's Article III, § 26, and the Utah Supreme Court had recently interpreted their constitutional provision. *See City of West Jordan v. Retirement Bd.*, 767 P.2d 530 (Utah 1988) and *Utah Associated Mun. Power v. PSC*, 789 P.2d 298 (Utah 1990).

■ This record reflects the trial court imposed the correct standard of proof to assess the constitutionality of SDCL ch. 34–11B. The trial court specifically held that "there is a strong presumption as to the constitutionality of the statute and that the

burden is upon [Specht] to prove that the statute—or to satisfy the court the statute is unconstitutional."

Furthermore, the trial court explained that it agreed with the authority cited by the attorney general, wherein this court held in *Sedlacek v. S.D. Teener Baseball Program*, 437 N.W.2d 866, 868 (S.D.1989):

> There is a strong presumption that the laws enacted by the Legislature are constitutional and that presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution.

*Oien v. City of Sioux Falls*, 393 N.W.2d 286, 289 (S.D.1986); *Matter of Certain Territorial Electric Boundaries, etc.*, 281 N.W.2d 65 (S.D.1979). 'Further, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision.' *Id.* at 69.

Under settled South Dakota law, the trial court was required to determine whether or not SFREMSA was engaging in a "municipal function." In ruling on this issue of first impression, the trial court considered the analysis provided by the Utah Supreme Court decisions cited above.

The Utah court, in deciding a "municipal functions" question, gave us this guidance:

> Given that the cases establish no bright line test for determining whether a function is municipal and that no Utah cases have considered a situation factually analogous to the retirement system at issue, we must at least articulate our approach to this characterization issue. We reject, as a general matter, the search for any hard and fast categorization of specific functions as 'municipal' or 'state.' Instead, in determining whether a function is municipal, we think it appropriate to take a balancing approach, one which considers a number of factors that are pertinent to the specific legislation at issue. These include, but are

---

4. In *Baltzer v. Baltzer*, 422 N.W.2d 584, 592 (S.D.1988), we stated: "This Court can examine its decisions and the decisions of other jurisdictions to arrive at proper concepts of law[.]" A trial court also should do the same when confronted with issues not previously addressed in this jurisdiction.

not limited to, the relative abilities of the state and municipal governments to perform the function, the degree to which the performance of the function affects the interests of those beyond the boundaries of the municipality, and the extent to which the legislation under attack will intrude upon the ability of the people within the municipality to control through their elected officials the substantive policies that affect them uniquely. This last factor should serve to ensure due deference to a paramount purpose of the ripper clause,[5] as it has been interpreted in Utah: ' "to prevent interference with local self-government." ' *Municipal Bldg. Auth. v. Lowder*, 711 P.2d [273 at 281 (Utah 1985)] (quoting *Lehi City v. Meiling*, 87 Utah [237] at 272, 48 P.2d [530] at 546). [ (1935) ] This sort of balancing approach is best suited to accomplishing the purposes of the ripper clause without erecting mechanical conceptual categories that, without serving any substantial interest, may hobble the effective government which the state constitution as a whole was designed to permit.

*City of West Jordan*, 767 P.2d at 534 (footnote added).

It is obvious the trial court in the case at bar utilized this balancing approach to determine the "municipal function" issue, but did not disregard the burden of proof precedent applicable to constitutional questions in South Dakota. This is evident in the trial court's reference to the correct standard of proof.

### Issue II

Was the trial court correct in ruling SDCL ch. 34–11B unconstitutional?

City claims the trial court incorrectly declared SDCL ch. 34–11B unconstitutional. City has four grounds for its argument, namely: (1) SFREMSA is not engaging in a "municipal function" as prohibited by Article III, § 26; (2) SFREMSA is not a "special commission"; (3) SFREMSA is subject to local control and oversight; and (4) SFREMSA's power to tax is constitutional. These arguments will be addressed in order.

### A. Is SFREMSA engaging in a "municipal function"?

■ Eight states have constitutional provisions with clauses commonly referred to as "ripper" clauses.[6] *Ripper Clause, supra.* As indicated, ripper clauses declare unconstitutional any legislative delegation of municipal functions to special public or private commissions. *Id.* South Dakota's ripper clause is Article III, § 26, as set forth in footnote three.

This court has never ruled what constitutes a nondelegable "municipal function" under Article III, § 26.[7] Here, the trial court specifically found that "municipalities are better able to govern ambulance and emergency medical services because of the wide diversity between communities and ... resources within [those] communities." The trial court found that municipalities have historically performed and are better able to perform ambulance and emergency medical service. We agree. The trial court also observed that although oversight and regulation of ambulance service and prehospital emergency care may affect some interests of people beyond the boundaries of Sioux Falls, its main concern is a city-wide function protecting the local interest only.

---

**5.** These clauses make it a constitutional violation if the legislature delegates to any "special commission, private corporation or association, any power ... to perform any municipal functions." *City of West Jordan*, 767 P.2d at 532 (quoting Utah Const. art. VI, § 28); *see generally* Porter, *The Ripper Clause in State Constitutional Law: An Early Urban Experiment—Parts I and II*, 1969 Utah L.Rev. 287 (1969) (hereinafter *Ripper Clause* ). The purpose of these provisions is "to hold inviolate the rights of local self-government of cities and towns with respect to municipal improvements, money, property, effects, the levy-

ing of taxes, and the performance of municipal functions." *Logan City v. Public Utilities Commission*, 72 Utah 536, 271 P. 961, 972 (1928).

**6.** Pennsylvania, California, Colorado, Montana, New Jersey, South Dakota, Utah and Wyoming.

**7.** This court defined municipal as: "Of, or pertaining to, a city or corporation having the right of administering local government; as, municipal rights, municipal officers." *Davenport v. Elrod*, 20 S.D. 567, 574, 107 N.W. 833, 834 (1906).

■ Based on these findings, the trial court concluded that SFREMSA was engaged in a municipal function in violation of Article III, § 26. Although City claims that the trial court's findings are erroneous and SFREMSA is not engaged in a municipal function, it has not designated which of the trial court's findings, if any, are clearly erroneous. Instead, City argues that, since the statutes allow more than one municipality to participate in an EMS authority, it is not a municipal function. This argument rings hollow. The fact that the statutory scheme allows only municipal corporations to participate in such EMS authorities supports the trial court's conclusion that this is a municipal function.[8]

■ City further alleges that SFREMSA is not engaged in a municipal function because the state issues licenses to EMS authorities, like it does to physicians, surgeons, practitioners of healing arts, physicians' assistants, advanced life support personnel, registered and practical nurses, medical assistants, respiratory care practitioners, ambulances, and hospitals. We are not persuaded by such argument. Were we to adopt City's position, the only true "municipal function" would be one that is independent of state license or regulation. Just because people subject to these regulations are required to obtain licenses from the state does not render the function nonmunicipal. Therefore, we affirm the trial court's holding that SFREMSA is engaged in a municipal function.[9]

B. SFREMSA is a "special commission" prohibited by Article III, § 26.

■ The trial court found that SFREMSA was a special commission in conflict with Article III, § 26. City argues that this is erroneous.

To support its position, City cites *Tribe v. Salt Lake City Corporation*, 540 P.2d 499, 502–03 (Utah 1975), where the Utah Supreme Court defined a special commission as "some body or group separate and distinct from municipal government." City's reliance on this case is misplaced. SDCL ch. 34–11B defines an EMS authority as "an *independent* public body." (Emphasis added.) SFREMSA by statute, and City's definition of "special commission," are one and the same. Therefore this argument lacks merit.

Further, as noted by the trial court, the effect was that the legislature was creating a special commission; it did not appoint the commission, but it defined its powers. Unfortunately, the legislation does not provide specific standards to guide the EMS authority in the broad exercise of its power.

C. The SFREMSA is not subject to local control or oversight.

■ As the trial court found, the most significant constitutional problem with the legislation "is the extent to which [it] will intrude upon the ability of the [municipality's citizens] to control through their elected officials the substantive policies that affect them uniquely."

City also asserts the trial court erred in finding SFREMSA not subject to local control, asserting that it is accountable because municipal corporations are not required to create an EMS authority. This argument is confusing. Whether or not a community creates an EMS authority is irrelevant and completely distinct from whether SFREMSA is accountable for its actions. We agree this entity is optional, but must examine its amenability to local control after it has been created. Our review indicates that once commissioned, the SFREMSA is beyond the control or supervision of any outside source.

8. SDCL 34–11B–2 allows only municipal corporations with populations of fifty thousand or more to create EMS authorities. At the time of enacting SDCL ch. 34–11B, only two communities in South Dakota had a population of more than fifty thousand and these communities are more than three hundred miles apart.

9. The most common cases discussing these ripper clause issues involve a State Public Utilities Commission (PUC) regulation of a municipally owned utility. Courts have consistently held that this regulation is unconstitutional because the municipal utility companies are under the supervision of regularly elected municipal officers. Therefore, protection from the state PUC is not needed.

City argues that SFREMSA is accountable to the citizens because the commissioners of the authority are appointed by the City Commission for a definite term. This argument is fatally flawed however, because SDCL ch. 34–11B has no provision for removing commissioners. Theoretically, commissioners can remain in their appointed positions forever. The trial court found that City had no power to remove the commissioners once appointed, or to control the taxing authority of those commissioners once the taxing authority had been granted. City has not effectively disputed this finding.

Another example of Commission's power is that its authority cannot be decreased unless all the commissioners consent to same in conjunction with the city commissioners. SDCL 34–11B–12. Furthermore, Commission's authority to act cannot be diminished if "the authority has any bonds outstanding ... unless one hundred percent of the holders of the bonds consent in writing." *Id.* Related to this issue, Specht also points out that SDCL 34–11B–31 allows SFREMSA to sell bonds without an election.[10] This ability to unilaterally sell municipal bonds contradicts SDCL 6–8B–2, which requires a sixty percent majority vote in favor of issuance before a public body may so act. By dispensing with the election requirement, the public has no control over this bonding authority.

Additionally, City is not free to withdraw from SFREMSA if it is in debt; yet SFREMSA is permitted to borrow money for any of its purposes, without any independent supervision or permission. SDCL 34–11B–12 & 31. Consequently, City is subject to SFREMSA's unsupervised, unaccountable financial practices.

City, in reality, has little or no control over the SFREMSA after its creation. From that point on, SFREMSA has the statutory authority to become a self-propelled, unaccountable, bureaucratic freight train. The trial court did not err in finding improper control of the organization.

**D. SDCL ch. 34–11B unconstitutionally grants EMS authorities the power to tax.**

■ City's final contention is that the trial court erred in finding an EMS authority's power to tax unconstitutional. City relies on the case of *Berdahl v. Gillis,* 81 S.D. 436, 136 N.W.2d 633 (1965), in which this court discussed the commissioner of revenue's ability to interpret tax legislation. This court held:

> [T]here are circumstances under which there may be delegated to an administrative officer, board or tribunal, some aspects of the taxing process, if in making such delegation, the legislature retains sufficient and proper control over those aspects which are not delegable, and if a sufficient guide or standard is laid down by the legislature for the guidance of the administrative officials.

*Id.,* 81 S.D. at 441, 136 N.W.2d at 636 (citing 57 Am.Jur. *Taxation* § 144 and § 148 (1971); 84 C.J.S. *Taxation* § 8 (1954)).

In effect, *Berdahl* defeats the proposition for which City cites it. The court clearly states that only *"some aspects of the taxing process"* may be delegated "if a sufficient guide or standard is laid down by the legislature for the guidance of the administrative officials." (Emphasis added.) An EMS Authority's power to tax is not so confined; SDCL 34–11B–26, in pertinent part, provides:

> An authority has ... the power to certify ... to the governing body creating it, the amount of tax to be levied by the governing bodies for emergency medical services purposes and the amount of tax to be levied by each municipal corporation participating in the creation of the emergency medical services authority. Each municipal corporation *shall* levy the amount certified.... The levy may not exceed the maximum levy permitted by the laws of this state for emergency medical services purposes and ambulance service purposes. Each municipal corporation *shall* collect the taxes certified ... and

---

**10.** SDCL 34–11B–31 provides:
    An emergency medical services authority may borrow money for any of its purposes and is empowered to issue its bonds therefor in accordance with the provisions of chapter 6–8B, exclu-
sive of §§ 6–8B–1 to 6–8B–8, inclusive. *No election is required for an authority to borrow, issue, sell or refund bonds.* An authority is recognized as a single public body. (Emphasis added.)

make payment to the emergency medical services authority. (Emphasis added.)

This statutory scheme delegates all aspects of the taxing process, except collection, to an EMS authority. Said delegation clearly exceeds "some aspect of the taxing process" authorized in *Berdahl*.

As the trial court noted, City has not yet granted taxing power to SFREMSA, despite the authority's request for that power, but the power is there. Again, that virtually means that, once granted, the citizens of Sioux Falls have ·no real control over the authority or its commissioners.

Contrary to City's argument, the fact that an EMS authority must "certify" a tax levy does not make such delegation constitutional. Once the tax is certified under SDCL 34–11B–12, "the municipal corporation *shall* levy the amount certified." *Id.* (emphasis added). *Berdahl* spoke in terms of providing standards under which the legislature could provide control and guidance. Under SDCL ch. 34–11B–26, no such control or guidance exists. Therefore, an EMS authority's ability to tax is prohibited by the above constitutional provision.

Other states have similarly interpreted their ripper clause with regard to this issue. For instance, the Pennsylvania Supreme Court has held that the taxing power may be delegated, "but such delegation is kept within defined lines, with supervisory control always vested in elective bodies." *Wilson v. School Dist. of Philadelphia*, 328 Pa. 225, 195 A. 90, 94 (1937). The Pennsylvania court also held that the ripper clause was "an express and emphatic limitation on the power of the Legislature to delegate to a nonelective board or commission the power to tax." *Id.* 195 A. at 99.

Likewise, the Supreme Court of Wyoming has held that no tax can be levied by officers who are only appointed and have not been elected by the people. *Lund v. Schrader*, 492 P.2d 202 (Wyo.1971) (citing *Stewart v. City of Cheyenne*, 60 Wyo. 497, 154 P.2d 355 (1944)). Although delegation of mere details of administering tax legislation may be constitutionally permissible, neither the legislature nor a local elected municipal body can delegate to any appointed body the power to levy taxes. *Evans v. West Norriton Tp.*

*Municipal Authority*, 370 Pa. 150, 87 A.2d 474, 479 (1952). No taxation without representation has been one of the hallmarks of this country's foundation. To allow an unaccountable EMS authority to wield the taxation sword would impale a basic principle of democracy.

Although this court has consistently upheld " 'any phase of the measure if the legislature would have enacted that much without the part the constitution rejects,' " it is clear that all provisions of SDCL ch. 34–11B are wholly interdependent. *City of Sioux Falls v. Sioux Falls, Etc.*, 89 S.D. 455, 461, 234 N.W.2d 35, 38 (1975) (citations omitted). Accordingly, the entire chapter must be declared unconstitutional. *Id.*

The trial court's judgment is affirmed in all respects, since Specht proved beyond a reasonable doubt that the statute in question violated Article III, § 26, of the South Dakota Constitution.

MILLER, C.J., SABERS, J., and WUEST and HENDERSON, Retired Justices, concur.

KONENKAMP, J., not having been a member of the Court at the time this matter was submitted to the Court did not participate.