## O'NEILL *v.* LEAMER.

ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 33.  Argued October 25, 26, 1915.—Decided November 29, 1915.

The propriety of delegating authority by the legislature to a court in the matter of formation of drainage districts is a state question.

Plaintiffs in error having unsuccessfully contended in the state court that the appropriation of their property for a drainage ditch was essentially for a private purpose and hence deprived them of prop-

erty without due process of law, this court has jurisdiction to review the judgment under § 237, Judicial Code.

The provisions of the Fourteenth Amendment embody fundamental conceptions of justice and do not prevent a State from adopting a public policy to meet special exigencies, such as the irrigation of arid, and the reclamation of wet, lands; nor does anything in the Federal Constitution deny to a State the right to formulate such a policy or to exercise eminent domain to carry it into effect.

The judgment of the state court in determining matters with which it is peculiarly familiar, such as necessity for establishing drainage districts, is entitled to the highest respect.

The Statutes of Nebraska of 1905 and 1909 relative to the establishment of drainage districts and the establishment thereof by the District Court, and the proceedings thereunder establishing such a district and appropriating property thereunder by eminent domain and payment of compensation therefor, *held* not to be unconstitutional as denying equal protection of the law to the owner of property taken, or depriving such owner of property without due process of law, or as impairing the obligation of any contract, or as violating any provision of the Fifteenth Amendment.

93 Nebraska, 786, affirmed.

THE facts, which involve the constitutionality under the Fourteenth Amendment and other provisions of the Federal Constitution of the Drainage District Law of Nebraska, and of a tax levied thereunder, are stated in the opinion.

*Mr. William V. Allen,* with whom *Mr. M. D. Tyler* was on the brief, for plaintiff in error.

*Mr. R. E. Evans,* with whom *Mr. A. C. Strong* was on the brief, for defendants in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

Under the laws of Nebraska (Laws 1905, ch. 161; Laws 1909, ch. 147; Cobbey, Ann. Stat., §§ 5561–5597; Rev. Stat. 1913, §§ 1797 *et seq.*) the District Court of the State made an order organizing "Drainage District No. 2

of Dakota County." The lands embraced within the district lay to the southeast of the village of Jackson and consisted of about 7,000 acres of swamp lands upon which were discharged the waters of Elk Creek coming from the northwest. It was recited in the order that the drainage of these lands would be "a public utility" and would "be conducive to the public convenience, health and welfare." Plans were adopted which involved the construction of a ditch across lands of the plaintiffs in error for the purpose of carrying the waters of the creek to Jackson Lake. These were lands which did not receive the flood waters of the creek but were situated northeast of Jackson and outside the drainage district. The defendants in error who had been chosen as supervisors of the drainage district instituted condemnation proceedings in the county court for the purpose of making the necessary appropriation, and awards were made.

This action was then begun by the plaintiffs in error (and another) in the state court to enjoin the construction of the ditch. The plaintiffs assailed the Nebraska statute as repugnant to the state constitution and further averred that to permit the defendants to construct the ditch would deprive the plaintiffs of their property without due process of law and deny to them the equal protection of the laws in violation of the Fourteenth Amendment. It was alleged that the enterprise was "wholly private and in the exclusive pecuniary interest of the so-called corporators" of the drainage district. The trial court made special findings, in substance, as follows: That the drainage district had been legally organized; that the defendants had been constituted its supervisors; that in conformity with the statute the drainage district had been declared by the District Court, upon due notice to all interested parties as required, to be a public corporation of the State; that the district had employed competent civil engineers who had made a complete plan, which

had been presented and duly confirmed, for draining, reclaiming, and protecting the lands in the district from overflow; that the route and ditch, thus approved, provided the most feasible and the safest method for taking care of the waters of the creek; that the description of the ditch, as shown, was a 'definite and accurate description of a proper right of way' through the lands of plaintiffs and others; that having failed to agree with the plaintiffs as to the value of the right of way and the damages which would result from the construction and maintenance of the proposed ditch, the defendants as supervisors had applied to the county judge in the manner provided by law for the appointment of appraisers, who having been duly appointed and having entered upon their duties and viewed the premises had fixed the value of the right of way and the damages to each of the plaintiffs at sums stated and had duly reported accordingly; that the outlet of the proposed ditch in Jackson Lake was formerly the channel of the Missouri River at a low stage, and that by way of this lake there was an adequate and direct outlet for the water of the creek into that river without overflowing the plaintiffs' lands; and that the defendants had not claimed the right to enter upon these lands until the award of the appraisers should have been paid to the county judge for the benefit of the parties respectively. It was thereupon adjudged that when the awards were paid the temporary injunction which had been issued should be dissolved and the action dismissed. This judgment was affirmed by the Supreme Court of the State. 93 Nebraska, 786.

With many of the questions discussed in argument this court is not concerned. It has been held that under the state law the drainage district was a public corporation, duly organized, and was entitled to exercise the power of eminent domain. The propriety of the delegation of authority to the District Court in the matter of the forma-

tion of the drainage district is a state question.  The attempt to invoke § 4 of Article IV of the Federal Constitution is obviously futile (*Pacific Telephone Co.* v. *Oregon,* 223 U. S. 118) and the objection as to suffrage qualifications in connection with the organization and management of the district, sought to be based on the Fifteenth Amendment, is likewise wholly devoid of substance.  It is also manifest that the State provided a tribunal for the determination of the compensation due to the plaintiffs by reason of the appropriation in question.  Constitution of Nebraska, Art. I, § 21; Laws of 1905, ch. 161, § 12; Cobbey, Ann. Stat., §§ 10517 *et seq.;* Rev. Stat. Nebraska, 1913, §§ 5940 *et seq.*  Appraisers were appointed, and the plaintiffs had due notice of hearing; they had full opportunity to be heard, to present any relevant question, and to complain of any irregularity or error.  The questions of fact as to the definite location of the ditch, the value of the right of way and the extent of the damage to the property affected which would be sustained through construction and operation were the subject of determination in an appropriate proceeding.[1]  See *United*

---

[1] With respect to the rights of the plaintiffs under the state law, the state court said: "The plaintiffs contend that the condemnation proceedings were void because they do not condemn and take certain lands of the plaintiff O'Neill which would be flooded by the waters of the ditch.  If the plaintiffs' lands, other than those taken by the condemnation proceedings, are damaged by this improvement, the law affords them a remedy, including the right of appeal to the court of last resort.  The statute provides that 'the same proceedings for condemnation of such right of way shall be had in all other respects, as is provided by law for the condemnation of rights of way for railroad corporations, the payment of damages and the rights of appeal shall be applicable to the drainage ditches and other improvements provided for in this act.'  Section 12.  The law is well settled in such case by many decisions of this court.  When the remedy at law is adequate, the prosecution of the work cannot be delayed by injunction. . . .  It is objected that the application for condemnation did not describe and locate the proposed ditch with sufficient accuracy. . . .  The

*States* v. *Jones*, 109 U. S. 513, 519; *Backus* v. *Fort Street Union Depot Co.*, 169 U.. S. 557, 568, 569; *Hooker* v. *Los Angeles*, 188 U. S. 314, 318; *Appleby* v. *Buffalo*, 221 U. S. 524, 532; *McGovern* v. *New York*, 229 U. S. 363, 370, 371. It is said that no notice to the plaintiffs was required or given of the application for the appointment of appraisers. As to this, however, no question of Federal right appears to have been raised or decided in the Supreme Court of the State, nor do we intimate that such a claim would have had basis, if made. It is plain that with respect to none of these matters is there any question for our review. *Appleby* v. *Buffalo*, 221 U. S. 524, 529.

The defendants in error have moved to dismiss upon the ground that there is no Federal question whatever presented by the record. But we think that the plaintiffs sufficiently raised the question whether the appropriation was essentially for a private purpose and hence contrary to the Fourteenth Amendment as amounting to a deprivation of property without due process of law, and that their contention as to their Federal right in this respect was denied by the state court. In this view, jurisdiction attaches (*Missouri Pacific Railway* v. *Nebraska*, 164 U. S. 403, 417; *Madisonville Traction Co.* v. *Saint Bernard Mining Co.*, 196 U. S. 239, 251, 252; *Clark* v. *Nash*, 198 U. S. 361; *Strickley* v. *Highland Boy Gold Mining Co.*, 200

drawings, which the appraisers had, showed the exact location of the proposed ditch. There is nothing to indicate that the appraisement of damages was in any way affected by any supposed uncertainty as to the location. The county court had power to correct any irregularities in the method of appraisement. If by reason of the difference in the statute from that construed in *Trester* v. *Missouri P. R. Co.*, 33 Nebraska, 171, that case is not to be regarded as decisive of the case at bar upon this point, which we do not decide, it seems clear that the application was sufficiently definite to give the county court jurisdiction of the proceedings. Errors, if any, not affecting the jurisdiction of the court should have been corrected in that court or upon appeal." 93 Nebraska, pp. 789, 790.

U. S. 527; *Offield* v. *N. Y., N. H. & H. R. R.*, 203 U. S. 372, 377; *Hairston* v. *Danville & Western Railway*, 208 U. S. 598, 605, 606; *Union Lime Co.* v. *Chicago & N. W. Rwy.*, 233 U. S. 211, 218) and we pass to the consideration of the statutory plan.

The provisions of the statute are elaborate but the principal features may be briefly outlined. In a proceeding initiated by a majority in interest of the owners 'in any contiguous body of swamp or overflowed lands,' for the purpose of having such land reclaimed and protected from the effects of water, the District Court for the proper county may declare the drainage district as defined to be a public corporation of the State. To this end, the initiating proprietors must file articles of association, giving the name of the proposed district, the number of years it is to continue, its extent which must not be less than 160 acres, and an appropriate description of parcels and owners. Provision is made for summons to non-signing owners of lands averred to be benefited and for the hearing of objections to the organization. Property not benefited may be excluded from the district. If the organization is approved by the court, the clerk within a time specified is to call a meeting of the owners of the lands within the district for the election of a board of five supervisors to be composed of such proprietors and a majority of whom must be resident within the county or counties in which the district is situated; each owner is to have one vote for each acre owned. Under the direction of this board, which has defined authority and compensation, a topographical survey is to be made of the district, the various tracts and properties are to be classified according to benefits, which are to be assessed, and each parcel within the district is to bear its share of the entire cost and expenses incurred in making the improvements in proportion to benefits. A drain commissioner is to be appointed who, subject to the board's control, is to have general superin-

tendence of works under contracts awarded. If it appears that lands not embraced within the district will be benefited, proceedings may be had to bring them in. Condemnation of lands, easements, or franchises, within or without the district for the purpose of constructing the necessary ditches, dykes, etc., may be had. Provision is made for the hearing of objections to the proposed classification and assessments, and aggrieved objectors may appeal from the decision of the board of supervisors to the District Court. Tax levies upon the properties assessed are provided for, and the board is authorized to issue bonds of the district under stated conditions. Any person owning lands within the district which is separated from the ditch or watercourse for which it has been assessed may secure access to it across intervening lands by resort to a described proceeding. The treasurer of the county in which the district, or the largest part of it, is situated is made 'ex officio treasurer' of the district for the purpose of collecting and disbursing the taxes or assessments laid under the act.

The plaintiffs in error contend that the plan is simply one for the private advantage of the property owners and they direct special attention to the provision of the statute that the fact that the district is to contain 160 acres or more of wet or overflowed lands shall be sufficient cause for declaring the 'public utility' of the improvement. But we do not find that the Supreme Court of the State has sustained the act as applicable to any case in which it was considered upon a judicial examination of the facts that the undertaking served private interests alone. On the contrary, we assume it to be the law of Nebraska that property may be taken in the furtherance of reclamation projects only where it is found that the public welfare is involved. Acts with a different purpose have been held unconstitutional. *Jenal* v. *Green Island Draining Co.,* 12 Nebraska, 163; *Welton* v. *Dickson,* 38 Nebraska, 767.

With respect to the act here in question the state court
has emphatically declared that the enterprises which it
contemplates are those distinctly of a public character.
In *Drainage District No. 1* v. *Richardson County*, 86
Nebraska, 355, where the county was required to con-
tribute on account of special benefits accruing to its high-
ways within a drainage district organized under the stat-
ute, the Supreme Court of Nebraska said upon this point:
"That question was decided by this court in the case of
*Neal* v. *Vansickle*, 72 Nebraska, 105. It was there said:
'That the districts contemplated by the act are intended
to be of a purely public and administrative character,
is evident as well from the title as from the body of the
law itself. Its officers are chosen by popular election and
their powers, duties, compensation and terms of service
are prescribed by the statute. The sources of its income
are predetermined as are also the uses to which it may be
applied, and the county treasurer is made the custodian of
its funds, and his disbursement of them regulated as in
case of other public moneys. In our opinion, it is too
late in the day to contend that the irrigation of arid lands,
the straightening and improvement of watercourses, the
building of levees and the draining of swamp and over-
flowed lands for the improvement of the health and com-
fort of the community, and the reclamation of waste places
and the promotion of agriculture, are not all and every of
them subjects of general and public concern, the promo-
tion and regulation of which are among the most important
of governmental powers, duties and functions.' . . .
We see no reason at this time to depart from that opinion,
and therefore this contention must be considered fore-
closed so far as this court is concerned."

See also *Barnes* v. *Minor*, 80 Nebraska, 189; *State* v.
*Hanson*, 80 Nebraska, 724, 742. These decisions were
deemed to be controlling in the present case. 93 Nebraska,
pp. 788, 789.

We find no ground for a contrary view as to the nature of the authorized enterprise. We have repeatedly said that the provisions of the Fourteenth Amendment, embodying fundamental conceptions of justice, cannot be deemed to prevent a State from adopting a public policy for the irrigation of arid lands or for the reclamation of wet or over-flowed lands. States may take account of their special exigencies, and when the extent of their arid or wet lands is such that a plan for irrigation or reclamation according to districts may fairly be regarded as one which promotes the public interest, there is nothing in the Federal Constitution which denies to them the right to formulate this policy or to exercise the power of eminent domain in carrying it into effect. With the local situation the state court is peculiarly familiar and its judgment is entitled to the highest respect. *Clark* v. *Nash, supra; Strickley* v. *Highland Boy Mining Co., supra; Hairston* v. *Danville & Western Rwy., supra; Union Lime Co.* v. *Chicago & Northwestern Rwy., supra.* It has been held that it is not necessary that the state power should rest simply upon the ground that the undertaking is needed for the public health; there are manifestly other considerations of public advantage in providing a general plan of reclamation by which wet lands throughout the State may be opened to profitable use. *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112, 163. Nor is the statutory scheme to be condemned because it contemplates improvements in districts. Drainage districts may be established as well as school districts. All lands within the established district which require drainage are to enjoy the benefits of the plan. See 2 Lewis on Eminent Domain, 3d ed., p. 571. Nor is it an objection that private property within the district, which is established in execution of the public policy, will be benefited; and it is clearly not improper that the cost and expense should be apportioned according

to benefits. *Fallbrook Irrigation District* v. *Bradley*, *supra*.

In the present instance, the record shows that the drainage district, as organized, embraces a large area with many proprietors, and that, after contest in the original proceeding, the District Court made its deliberate order that the enterprise would be a public utility and conducive to the 'public convenience, health and welfare.' Nothing appears to warrant a different conclusion. Neither in the statutory provisions as construed by the state court nor in their application in the particular case is there basis for finding that the plaintiffs in error have been deprived of their property without due process of law. Rather must it be said that the ruling as to the authority of the State to make the condemnation for the described purpose has, from the standpoint of the Federal Constitution, abundant support in the decisions of this court. *Wurts* v. *Hoagland*, 114 U. S. 606; *Fallbrook Irrigation District* v. *Bradley*, *supra; Clark* v. *Nash*, *supra; Strickley* v. *Highland Boy Mining Co.*, *supra*.

*Judgment affirmed.*