379 F.2d 491
 Morris H. KRAMER, Plaintiff-Appellant,
v.
UNION FREE SCHOOL DISTRICT NO. 15, Raymond S. Baron, Jesse Cestari, Bardon Deixel, Ralph J. Edsel, J. Gibson Fruin, Elliot A. Norwalk and Harold S. Rosenfeld, Defendants-Appellees.
 No. 428.
 Docket 31105.
 United States Court of Appeals Second Circuit.
 Argued April 19, 1967.
 Decided June 21, 1967.
 
 Murray A. Miller, New York City, (Bradley B. Davis, New York City, on the brief), for appellant.
 John P. Jehu, Albany, N. Y. (Charles A. Brind, Albany, N. Y., on the brief), for appellees.
 Daniel M. Cohen, New York City, (Louis J. Lefkowitz, Atty. Gen. of New York, on the brief), for intervenor, State of New York.
 Before LUMBARD, Chief Judge, and KAUFMAN and HAYS, Circuit Judges.
 HAYS, Circuit Judge:
 
 
 1
 Plaintiff, Morris H. Kramer, appeals from an order entered in the United States District Court for the Eastern District of New York denying his motion to convene a three-judge court under 28 U.S.C. § 2281,[1] and dismissing his complaint in an action to declare unconstitutional New York State Education Law McKinney's Consol.Laws, c. 16, § 2012,[2] which establishes qualifications for voting at school district meetings, and to enjoin its enforcement. The opinion of the district court is reported at 259 F.Supp. 164 (E.D.N.Y.), petition for writ of mandamus denied sub nom. Davis v. Union Free School District No. 7, 385 U.S. 807, 87 S.Ct. 172, 17 L.Ed.2d 121 (1966). We hold that plaintiff's claim that the school district voting qualifications deny him equal protection of the laws raises a constitutional question which is not frivolous and which should therefore be heard by a three-judge court.
 
 
 2
 Plaintiff, a twenty-eight year old bachelor, is a resident of Atlantic Beach, New York, where he has lived with his parents in their private home for the past twenty years. Atlantic Beach is one of the communities included in Union Free School District No. 15.
 
 
 3
 Plaintiff's complaint alleges that, although he is a citizen of the United States and has voted in federal and state elections since 1959, he has been denied the right to vote in school district elections because he does not possess the special voter qualifications required by Section 2012 of the New York Education Law (set out in full in footnote 2, supra). Plaintiff asks that a three-judge court be convened to declare Section 2012 unconstitutional. The district court ruled against plaintiff, rejecting as insubstantial his contention that by enfranchising taxpayers, parents and certain others, while disenfranchising him, Section 2012 denies him equal protection of the laws in violation of the Fourteenth Amendment to the Federal Constitution.
 
 
 4
 Plaintiff's appeal is properly before this court. See Utica Mutual Ins. Co. v. Vincent, 375 F.2d 129 (2d Cir. 1967), citing Bell v. Waterfront Comm'n, 279 F.2d 853, 858 (2d Cir. 1960).
 
 
 5
 The fact that defendants are a local school board and its members rather than state officials does not furnish a basis for the denial of the application to convene a three-judge court, since "this is a case where the state statute that is challenged applies generally to all * * school boards of the type described." Sailors v. Board of Education, 387 U.S. 105, 107, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967) (footnote omitted).
 
 
 6
 The principles to be applied in deciding whether a three-judge court should be convened have been succinctly stated by the Supreme Court:
 
 
 7
 "When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962); see Schneider v. Rusk, 372 U.S. 224, 83 S.Ct. 621, 9 L.Ed.2d 695 (1963); Ex parte Poresky, 290 U.S. 30, 31-32, 54 S.Ct. 3, 78 L.Ed. 152 (1933); cf. Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).
 
 
 8
 While we express no view as to what should be the ultimate disposition of plaintiff's claim, we hold that he has raised a constitutional claim of sufficient substance to require that a three-judge court be convoked.
 
 
 9
 It may be true, as the appellees argue, that the state need not permit its citizens to vote on the matter with which Section 2012 is concerned. See Sailors v. Board of Education, supra. However, as the Supreme Court has held, "once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment." Harper v. Virginia Bd. of Elections, 383 U.S. 663, 665, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169 (1966).
 
 
 10
 Appellees concede that "the Equal Protection Clause of the Fourteenth Amendment restrains the States from fixing voter qualifications which invidiously discriminate" (Harper v. Virginia Bd. of Elections, supra, 383 U.S. at 666, 86 S.Ct. at 1081), but they contend that the classification scheme of Section 2012 rests "on real and not feigned differences," and that the distinctions drawn "have some relevance to the purpose for which the classification is made" and are not wholly arbitrary. See Walters v. St. Louis, 347 U.S. 231, 237, 74 S.Ct. 505, 98 L.Ed. 660 (1954). They argue that the statute is therefore consistent with the equal protection clause, that plaintiff's constitutional claim is frivolous and that a three-judge court need not be convened.
 
 
 11
 We do not consider frivolous the claim that a voter classification system which disregards plaintiff's interest in issues of public education while recognizing a taxpayer's economic interest constitutes an unreasonable discrimination in violation of the Fourteenth Amendment. In the Harper case the Supreme Court held
 
 
 12
 "that a State violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes the affluence of the voter or payment of any fee an electoral standard. Voter qualifications have no relation to wealth nor to paying or not paying this or any other tax." 383 U.S. at 666, 86 S.Ct. at 1081 (footnote omitted).
 
 
 13
 We do not hold that the Harper case, which involved voter qualifications for statewide elections, necessarily controls this one, which is concerned with local elections on limited issues.[3] We hold only that the questions presented, including the applicability of the Harper decision, must be resolved by a three-judge court.
 
 
 14
 Moreover public education is a matter of general concern to all citizens and it is not self-evident that the right to vote on questions of public education can properly be denied to others while permitted to parents and to those having school children living with them.
 
 
 15
 Although we reverse the decision and remand the case for submission to a three-judge court, we wish to add a word concerning the role of the district judge in cases where a three-judge court is requested. We have recently stated that the district judge's obligation to determine whether a constitutional claim is sufficiently substantial to be submitted to a three-judge court is "an important responsibility, since the requirement of three judges `entails a serious drain upon the federal judicial system * * *' Phillips v. United States, 312 U.S. 246, 250, 61 S.Ct. 480, 85 L.Ed. 800 (1941), a burden not only on the inferior courts but, if the three judges retain the case, upon the Supreme Court by virtue of the provision for direct appeal, 28 U.S.C. § 1253." Utica Mutual Ins. Co. v. Vincent, supra, 375 F.2d at p. 131 (footnote omitted). When, as in this case, the district judge has carefully examined the issues presented and has taken the time to write a reasoned opinion, reversal of his decision compounds the burden on the federal judicial system. Still there will be cases where the question of the substantiality of the constitutional issue involved is a close one and where this court disagrees with the district court as to whether a three-judge court should be convened. Although an occasional reversal is therefore the inevitable price of a district judge's exercise of his responsibility in cases where a three-judge court is requested, the risk of reversal is much to be preferred to the alternative of automatically convening a three-judge court to hear such claims without a careful consideration of their substantiality.
 
 
 16
 The decision is reversed and the case remanded.
 
 
 
 Notes:
 
 
 [1]
 § 2281Injunction against enforcement of State statute; three-judge court required.
 An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.
 
 
 [2]
 § 2012Qualifications of voters at district meetings.
 A person shall be entitled to vote at any school meeting for the election of school district officers, and upon all other matters which may be brought before such meeting, who is:
 
 
 [1]
 A citizen of the United States
 
 
 [2]
 Twenty-one years of age
 
 
 [3]
 A resident within the district for a period of thirty days next preceding the meeting at which he offers to vote; and who in addition thereto possesses one of the following three qualifications:
 a. Owns or is the spouse of an owner, leases, hires, or is in the possession under a contract of purchase of, real property in such district liable to taxation for school purposes, but the occupation of real property by a person as lodger or boarder shall not entitle such person to vote, or
 b. Is the parent of a child of school age, provided such a child shall have attended the district school in the district in which the meeting is held for a period of at least eight weeks during the year preceding such school meeting, or
 c. Not being the parent, has permanently residing with him a child of school age who shall have attended the district school for a period of at least eight weeks during the year preceding such meeting.
 No person shall be deemed to be ineligible to vote at any such meeting, by reason of sex, who has the other qualifications required by this section.
 
 
 [3]
 The Supreme Court has characterized the functions of a Board of Education as "essentially administrative" and "not legislative in the classical sense." Sailors v. Board of Education, supra, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650
 
 
 IRVING R. KAUFMAN, Circuit Judge (concurring):
 
 17
 I agree with my brother Hays that a three-judge court should be convened because I am unable to conclude that appellant's constitutional challenge to § 2012 of the New York State Education Law is "insubstantial." But, it should not be inferred from my concurrence in the result that I believe the converse is true and that I view appellant's claim as being meritorious. We are, after all, dealing in a very misty area when we struggle to determine the propriety of convening a three-judge court. The Supreme Court's recent decisions in Moody v. Flowers, 385 U.S. 966, 87 S.Ct. 1544, 17 L.Ed.2d 431 (1967), Dusch v. Davis, 385 U.S. 999, 87 S.Ct. 1554, 17 L.Ed.2d 540 (1967), and Sailors v. Board of Educ., 385 U.S. 966, 87 S.Ct. 1549, 17 L.Ed.2d 431 (1967), bear witness to the difficulty the courts have encountered.
 
 
 18
 In the case before us, while the defendants are not state officials, they are "functioning pursuant to a statewide policy and performing a state function." Moody v. Flowers, 385 U.S. 966, 87 S.Ct. at 1548. And, as Judge Hays correctly notes, the statute being challenged "applies generally to * * * all school boards." Sailors v. Board of Educ., 385 U.S. 966, 87 S.Ct. at 1551. In these circumstances, appellant's constitutional challenge, which I have stated cannot be said to be insubstantial on its face, should properly be examined in the first instance by a three-judge court.
 
 LUMBARD, Chief Judge (dissenting):
 
 19
 I dissent. There is no need for three judges to consider a claim so patently without any merit.
 
 
 20
 I agree with my brothers that a district judge should carefully weigh the substantiality of any claim that a state law is in conflict with the federal Constitution before convening a three-judge court to determine it. And it is settled that a single judge may dismiss even a novel claim as insubstantial if it is "obviously without merit," Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933), and that a claim is not substantial simply because analysis is required to demonstrate its insubstantiality. See, e. g., Utica Mut. Ins. Co. v. Vincent, 375 F.2d 129 (2 Cir. 1967). Accordingly, I would affirm Judge Zavatt's holding that the constitutional issues raised by plaintiff's complaint are insubstantial, for reasons which I shall briefly indicate. In view of my brothers' decision to remand this case to a three-judge court, it would be inappropriate for me to set forth at length my views upon the merits. Compare Stratton v. St. Louis S. Ry., 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135 (1930).
 
 
 21
 Plaintiff contends that New York State's decision to limit the suffrage in elections for school district trustees[1] to the two groups it deems most directly concerned with public education, parents and the owners or lessees of real property whose taxes meet the district's budget, N.Y. Education Law, § 1717(1), is so "palpably arbitrary," Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 527, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959), and so "wholly irrelevant to the achievement of the State's objective," McGowan v. State of Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), as to deny residents of the district who are neither parents nor owners or lessees of real property the equal protection of the laws. It is a sufficient answer that New York's conclusion that parents and taxpayers are more vitally interested in the administration of public schools than others is plainly not arbitrary; for example, these groups, and generally no others, have been accorded standing in the federal courts to challenge the operation of the public schools. See Doremus v. Board of Educ., 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952).
 
 
 22
 Plaintiff argues, however, that the arbitrariness of the voter qualifications New York has set for school district elections is established by the Supreme Court's decision in Harper v. Virginia Bd. of Elections, 383 U.S. 663, 668, 86 S.Ct. 1079, 1082, 16 L.Ed.2d 169 (1966), which struck down a poll tax as a condition of voting in an election for a state legislature, on the grounds that
 
 
 23
 "[t]he principle that denies the State the right to dilute a citizen's vote on account of his economic status or other such factors," see Reynolds v. Sims, 377 U.S. 533, 554-571, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), "by analogy bars a system which excludes those unable to pay a fee to vote or who fail to pay,"
 
 
 24
 and that "[w]ealth, like race, creed, or color, is not germane to one's ability to participate intelligently in the electoral process." In my view Harper, which dealt with a flat monetary condition upon the right to vote in a statewide legislative election, is wholly inapplicable to qualifications for voting for a local administrative body, like a New York school district,[2] which are reasonably based on the likely degree of a would-be voter's knowledge of and concern in the body's activities. I reach this conclusion even assuming arguendo, as the Supreme Court did in Sailors v. Board of Educ., 385 U.S. 966, 87 S.Ct. 1549, 17 L.Ed.2d 431 (1967), that the one-man, one-vote rule of Reynolds v. Sims applies whenever "a State provides for an election of a local official or agency — whether administrative, legislative, or judicial."
 
 
 25
 Any attempt to ascertain the rationale of Harper is embarrassed by the Court's failure clearly to articulate the basis for its judgment that the poll tax requirement was irrational and arbitrary. See Bickel, The Voting Rights Cases, 1966 Sup.Ct.Rev. 79, 93-95 (Kurland ed.); Cox, Foreword: Constitutional Adjudication and the Promotion of Human Rights, 80 Harv.L.Rev. 91, 95-96 (1966). Nevertheless, several considerations persuade me that Harper does not draw into question reasonable qualifications for voting in local administrative elections. First, the Court specifically noted in Harper that only four states conditioned the statewide franchise upon payment of a poll tax. 383 U.S. at 666 n. 4, 86 S.Ct. 1079, 16 L.Ed.2d 169. By contrast, the franchise in local elections concerning, for example, water supply, sanitation removal, fire protection, and the operation of parks and schools is very commonly limited to those who use and/or pay for the services.[3] And such limitations have a readily apparent and rational basis, the greater concern and awareness of those who use and pay for such services, for which there is no analogue when voting in a statewide legislative election is conditioned upon payment of a poll tax. In fact, when Congress declared in section 10(a) of the Voting Rights Act of 1965, 79 Stat. 442 (1965), 42 U.S.C. § 1973h(a), that
 
 
 26
 "the payment of a poll tax as a precondition to voting * * * (ii) does not bear a reasonable relationship to any legitimate State interest in the conduct of elections,"
 
 
 27
 it was made clear in the House and Senate debates that this finding was not intended to apply to property qualifications in school district and other local administrative elections.[4] Second, the poll tax requirements struck down by Harper were apparently adopted to disfranchise Negro voters, see e. g., Harman v. Forssenius, 380 U.S. 528, 543-544, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965), although the Court did not rest its decision in Harper upon this ground. 383 U.S. at 66 n. 3, 86 S.Ct. 1079, 16 L.Ed.2d 169. It has not been suggested that New York's school district voting qualifications are racially motivated. Third, the salient vice of a restriction upon voting in statewide elections is that it tends to perpetuate itself by denying those it disadvantages any opportunity to remove it through democratic processes. See The Supreme Court, 1965 Term, 80 Harv.L. Rev. 91, 180 n. 23 (1966). By contrast, plaintiff can seek to have his exclusion from the school district franchise repealed by the New York legislature, for which his vote is unimpaired.
 
 
 28
 Federal courts have manifested the utmost reluctance to impose federal constitutional limitations upon qualifications for voting in local elections. See, e. g., O'Neill v. Leamer, 239 U.S. 244, 248, 36 S.Ct. 54, 60 L.Ed. 249 (1915); Hunter v. City of Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907). Sailors v. Board of Educ., 385 U.S. 966, 87 S.Ct. 1549, 17 L.Ed.2d 431 (1967), which recognizes that
 
 
 29
 "[v]iable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions,"
 
 
 30
 makes it clear that this reluctance has not been dissipated by Baker v. Carr, 369 U.S. 186, 226-232, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960). Whether school district trustees should be elected by taxpayers, by parents, by both, or by all residents is not an issue to be resolved by the federal courts. A complaint which seeks to have them do so is in my opinion insubstantial.
 
 
 31
 The circuit and district judges in the federal system are fully occupied with matters of substance which have an undeniable claim on their attention; we do no service to anyone by dignifying a claim so patently without merit by requiring three judges to convene and consider it, simply because my brothers do not think it insubstantial. As another panel of this court recently said, "When the single district judge has denied the injunction and three circuit judges are convinced that the pleadings show the claim to lack merit, they accomplish little save elegantia juris by reversing because they are not completely certain that the lack was so obvious as to have warranted dismissal by one judge rather than three." Green v. Board of Elections, 2 Cir., 380 F.2d 445 (June 13, 1967).
 
 
 
 Notes:
 
 
 [1]
 It should be noted that these qualifications do not apply to city school districts. In New York, Buffalo, Yonkers, Albany, and cities with less than 125,000 inhabitants which so elect, the board is appointed by the mayor and/or counsel. N. Y. Education Law, §§ 2531, 2553(2), (4). In other cities, the board is elected by the resident voters of the district. N. Y. Education Law, §§ 2553(3), 2603
 
 
 [2]
 The chief duties of New York school districts are to build and maintain schools, employ teachers, and prescribe courses of study. See N. Y. Education Law, §§ 1604, 1709. These duties parallel those of Michigan county boards of education, which the Supreme Court in Sailors v. Board of Educ., 385 U.S. 966, 87 S.Ct. 1549, 17 L.Ed.2d 431 (1967), termed "essentially administrative" and "not legislative in the classical sense."
 
 
 [3]
 For example, New York limits voting upon propositions entailing expenditure of money by a town or village to residents owning assessed property in the town or village. See N. Y. Town Law, McKinney's Consol.Laws, c. 62, § 84(1); N. Y. Village Law, McKinney's Consol.Laws, c. 64, § 4-402(b). See also N. Y. General Municipal Law, McKinney's Consol.Laws, c. 24, § 120-p; N. Y. Town Law, § 175 (2)
 
 
 [4]
 See 111 Cong.Rec. 10460 (1965) (remarks of Senators Dominick and Javits), 15710-12 (1965) (remarks of Representatives Celler and Hutchinson), 16218 (1965) (remarks of Representative McClory)